**STATE of Tennessee**

v.

**Joseph WILSON.**

Supreme Court of Tennessee,
at Nashville.

Oct. 5, 2006 Session.

Jan. 24, 2007.

Kerry Knox, Murfreesboro, Tennessee; Merrilyn Feirman, Nashville, Tennessee; and Ana Escobar, Nashville, Tennessee (at trial) for the appellant, Joseph Wilson.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Preston Shipp, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General (at trial); and Dent Morriss, Assistant District Attorney General, Springfield, Tennessee (at trial), for the appellee, State of Tennessee.

## OPINION

JANICE M. HOLDER, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., CORNELIA A. CLARK, J., and ADOLPHO A. BIRCH, JR., Sp.J., joined.

Following a jury trial, the defendant was convicted of evading arrest, carjacking, one count of reckless endangerment, and driving on a revoked license. On appeal, the defendant argues that the evidence was insufficient to support his convictions for carjacking and reckless endangerment and that the trial court erred in not instructing the jury on robbery and theft as lesser-included offenses of carjacking. We hold that the evidence is sufficient to sustain the defendant's convictions for carjacking and reckless endangerment. We further hold that robbery and theft are not lesser-included offenses of carjacking and that therefore the failure to give instructions with regard to these offenses was not plain error. Accordingly, we affirm the judgment of the Court of Criminal Appeals.

## I. Factual and Procedural Background

On June 30, 2002, Officer Billy Moyer of the Springfield Police Department became aware of an outstanding warrant for the arrest of Joseph Wilson ("Wilson"). Officer Moyer also learned that Wilson could be found in a trailer park on Childress Street. Near midnight on July 1, 2002, Officer Moyer and his partner, Officer "Jimbo" Lassiter, went to the trailer park on Childress Street. When the officers arrived, there was a crowd of twenty-five to thirty people "hanging out." The officers saw a person who matched the description of Wilson sitting on the hood of a vehicle. As the officers approached the

vehicle, however, someone yelled, "Police," and the crowd, including Wilson, scattered. Wilson drove away at a high rate of speed. The two officers pursued Wilson and called for assistance. Officer Joe Macleod, a K–9 officer, joined in the pursuit of Wilson's vehicle, and the officers activated their emergency lights. Eventually, Wilson returned to the trailer park and jumped out of his moving vehicle. His car struck a tree. Wilson fled, and the officers pursued him on foot.

Officer Moyer tackled Wilson, who pushed him off and continued running despite Officer Macleod's warning that he would release his police dog. When released, the dog bit Wilson's arm, and Wilson fell to the ground. Someone in the crowd hit the dog with a trash can, and the dog released Wilson's arm. Wilson ran across the street into a parking area.

Wilson approached a parked car in which Mr. Redrickous Burr was sitting. Mr. Burr was behind the wheel listening to the radio. Officer Macleod testified that Wilson entered the vehicle though the driver-side door. Officer Moyer, however, testified that Wilson entered the car from the passenger-side door and that either Mr. Burr or Wilson then opened the driver-side door. Mr. Burr, who was wedged between Wilson and the driver-side door, then unsuccessfully attempted to exit the vehicle. Officer Macleod released the dog again, and the dog again bit Wilson on the arm. Officer Moyer was standing by the car's front bumper. Wilson started the car and accelerated, with both the driver-side and passenger-side doors open.

Officer Moyer testified that he was pinned against another vehicle parked next to Mr. Burr's vehicle when Wilson began to move Mr. Burr's vehicle and that the front of Mr. Burr's vehicle brushed against him as Wilson pulled away. He said that he "was afraid [his] legs were going to be crushed." Officer Moyer also testified that the police dog was still holding onto Wilson's arm when the car began to move. At that point, Officer Macleod ordered the dog to release Wilson. Mr. Burr was able to leave the vehicle by crawling out through the passenger-side door. Wilson sped away and traveled for a few blocks before wrecking the vehicle and running away on foot once again. The police dog caught up with Wilson, bit his arm, and Wilson fell to the ground. At that point, Officer Moyer was able to handcuff Wilson and place him under arrest. Officer Moyer admitted that he did not see Wilson with a weapon during the chase.

Officer Moyer testified that upon entering the vehicle Wilson "inched up under" Mr. Burr, who appeared very surprised, excited, and upset. Officer Macleod described Mr. Burr as "frantic" and "scared." Both officers testified that Mr. Burr said to Officer Macleod, "Get him out of my car, Joe Mack."

Mr. Burr testified that he was sitting in his mother's vehicle with the keys in the ignition, listening to the radio, when Wilson approached. Wilson, whom he did not personally know, entered the vehicle from the driver-side door and started the vehicle. Mr. Burr stated that he was not afraid of Wilson or the police dog and that he left the vehicle from the passenger-side door "on [his] own free will" and was just trying "to get out of the way." Mr. Burr denied saying anything to Officer Macleod and denied telling the prosecutor that he had been subjected to pressure concerning his testimony.

Two witnesses who were part of the crowd testified. Brandon Northington saw Wilson running and fighting with the police dog. He testified that Wilson did not pull Mr. Burr out of the car but that Wilson entered the car through the driver-side door and Mr. Burr got out of the

passenger-side door. He said that the officers were not close to the car when Wilson drove away. Clark Moffett testified that he was standing across the street when Wilson drove off in the car in which Mr. Burr had been sitting. He also said he witnessed Wilson running to get away from the police dog. He did not see the car door strike Officer Moyer.

On September 25, 2002, the Robertson County Grand Jury returned an indictment charging Wilson with the following: one count of evading arrest while operating a motor vehicle, one count of carjacking, two counts of reckless endangerment, one count of driving on a revoked driver's license (fourth offense), and one count of resisting arrest. Following a jury trial on March 11–12, 2003, Wilson was convicted of evading arrest, carjacking, one count of reckless endangerment, and driving on a revoked license. The trial court conducted a sentencing hearing on April 25, 2003, and sentenced Wilson as a Range II offender to two years for evading arrest, twelve years for carjacking, two years for reckless endangerment, and eleven months and twenty-nine days for driving on a revoked license. The trial court ordered that the sentences be served concurrently, resulting in an effective sentence of twelve years. Wilson moved for a new trial, and the trial court denied this motion. Wilson timely appealed, and the Court of Criminal Appeals affirmed the lower court's judgment on June 16, 2005. We granted review in this case to consider whether the trial court erred in failing to charge robbery and theft as lesser-included offenses of carjacking.

## II. Analysis

### A. Sufficiency of the Evidence

Wilson challenges the sufficiency of the evidence for both carjacking and reckless endangerment. We conclude that the evidence is sufficient to sustain these two convictions.

Under Rule 13(e) of the Tennessee Rules of Appellate Procedure, "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt, on appeal a convicted criminal defendant challenging the sufficiency of the evidence bears the burden of demonstrating why the evidence is insufficient to support the verdict. *See State v. Evans,* 108 S.W.3d 231, 237 (Tenn.2003). We must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if after considering the evidence in the light most favorable to the prosecution we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Hall,* 8 S.W.3d 593, 599 (Tenn.1999). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. *Hall,* 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in favor of the prosecution's theory of the case. *State v. Bland,* 958 S.W.2d 651, 659 (Tenn.1997). The trier of fact resolves questions concerning the credibility of witnesses, the weight and value of the evidence, and all factual issues raised by the evidence; an appellate court should not re-weigh or re-evaluate the evidence. *Evans,* 108 S.W.3d at 236; *Bland,* 958 S.W.2d at 659. In addition, an appellate court should not substitute its own inferences drawn from circumstantial evidence for those drawn by

the trier of fact. *Evans*, 108 S.W.3d at 236–37.

■ The statutory elements of carjacking are the intentional or knowing taking of a motor vehicle from the possession of another by use of either (1) a deadly weapon or (2) force or intimidation. Tenn.Code Ann. § 39–13–404(a) (1997). Both parties concede that Wilson did not use a deadly weapon to take the vehicle from Mr. Burr. Wilson argues that the State failed to prove either force or intimidation.

Officer Moyer testified that Wilson "inched up under" Mr. Burr and that Mr. Burr "appeared very surprised" and was excited and upset. Officer Macleod testified that when Wilson entered the vehicle in which Mr. Burr was sitting, Mr. Burr looked "frantic" and "scared." Officer Macleod testified that Mr. Burr asked him to remove Wilson from the car. Mr. Burr, however, testified that he did not ask Officer Macleod to remove Wilson from the car and that he got out of the car "on [his] own free will" and was simply trying "to get out of the way." Mr. Burr also stated that he crawled to the passenger-side door to exit the vehicle. The jury accredited the testimony of Officers Macleod and Moyer and concluded that force or intimidation was used to take Mr. Burr's vehicle. In a light most favorable to the State, the evidence is sufficient to support the jury's finding that Wilson took Mr. Burr's car through the use of force or intimidation. Therefore, Wilson is not entitled to relief on this basis.

■ We next consider the sufficiency of the evidence for a conviction of reckless endangerment. The elements of felony reckless endangerment are that (1) a person recklessly engages in conduct which places or may place another person in imminent danger of death or serious bodily injury and (2) that it was committed with a deadly weapon. Tenn.Code Ann. § 39–13–103 (1997). Reckless conduct occurs when

the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

*Id.* § 39–11–302(c) (1997). In this case, Wilson knew that the officers were chasing him. He was aware of Officer Moyer's presence and consciously disregarded the risk that he might seriously hurt Officer Moyer when he commandeered Mr. Burr's vehicle. Officer Moyer testified that when Wilson moved the car, he was pinned against another vehicle parked nearby and feared his legs would be crushed. An automobile is considered a "deadly weapon." *State v. Tate*, 912 S.W.2d 785, 787 (Tenn.Crim.App.1995). Wilson's conduct meets the requirements for reckless endangerment because he temporarily pinned Officer Moyer between Mr. Burr's car and another car. This evidence is sufficient to show that Wilson was aware of but consciously disregarded a substantial and unjustifiable risk that nearby police officers could be seriously injured or killed when he carjacked and sped away in Mr. Burr's vehicle. Thus, Wilson's argument with regard to the sufficiency of the evidence supporting his reckless endangerment conviction is without merit.

### B. Robbery and Theft as Lesser-Included Offenses of Carjacking

■ The State argues that according to Tennessee Code Annotated section 40–

18–110,[1] Wilson waived his right to challenge the trial court's failure to charge robbery and theft as lesser-included offenses of carjacking because he did not request a jury instruction on these offenses. We agree that because Wilson did not request an instruction on the offenses of robbery and theft in writing prior to the trial court's charge to the jury, he waived this issue on appeal. Tenn.Code Ann. § 40–18–110(c) (2003); *see also State v. Page,* 184 S.W.3d 223, 229–30 (Tenn.2006) (holding that the waiver of a lesser-included offense for purposes of plenary appellate review is constitutionally permissible). Wilson argues that despite the absence of an oral or written request for lesser-included offense instructions on theft or robbery, the failure to give such instructions in this case is plain error. We disagree that the trial court's failure to instruct the jury regarding the offenses of robbery and theft constitutes plain error.

In *Page,* we held that

[w]hile a defendant's failure to request a lesser-included offense instruction in writing waives the right to raise such omission as an issue on appeal, the right itself is not waived because the trial court may still charge the jury on any instructions supported by the evidence. *See* Tenn.Code Ann. § 40–18–100(b). The trial court would presumably still give lesser-included offense instructions, even when not requested, when those instructions are necessary for a fair trial.

Irrespective of section 40–18–110, a defendant has a constitutional right to a correct and complete charge of the law to ensure that he receives a fair trial. *State v. Teel,* 793 S.W.2d 236, 249 (Tenn. 1990).

184 S.W.3d at 229. We then considered whether it was appropriate to consider the trial court's failure to instruct the jury on lesser-included offenses, even when not requested in writing, under a plain error analysis. *Id.* at 230–31. Rule 52(b) of the Tennessee Rules of Criminal Procedure provides that "plain error" is "an error which has affected the substantial rights of an accused," and when necessary to do substantial justice an appellate court may consider such an error "at any time, even though not raised in the motion for a new trial or assigned as error on appeal."

When determining whether such plain error review is appropriate, the following factors must be established:

(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused [must not have waived] the issue for tactical reasons; and (e) consideration of the error [must be] "necessary to do substantial justice."

*State v. Terry,* 118 S.W.3d 355, 360 (Tenn. 2003) (quoting *State v. Adkisson,* 899 S.W.2d 626, 641–42 (Tenn.Crim.App.1994)). In addition, "[a]ll five factors must be established by the record" before an appellate court may "recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of

---

1. Tennessee Code Annotated section 40–18–110(c) currently provides:

   Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, the lesser included offense instruction is waived. Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for a new trial or on appeal.

   Tenn.Code Ann. § 40–18–110(c) (2006).

the factors cannot be established." *Id.* (citing *State v. Smith,* 24 S.W.3d 274, 283 (Tenn.2000)). We hold that the trial court's failure to give the instructions at issue is not plain error since, as we explain below, robbery and theft are not lesser-included offenses of carjacking and thus no clear and unequivocal rule of law was breached.

██ To determine what is a lesser-included offense of any given offense, we use the formula we set forth in *State v. Burns,* 6 S.W.3d 453 (Tenn.1999). According to the applicable parts of the three-part *Burns* test,

An offense is a lesser-included offense if:

(a) all of its statutory elements are included within the statutory elements of the offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

(1) a different mental state indicating a lesser kind of culpability; and/or

(2) a less serious harm or risk of harm to the same person, property or public interest; . . . .

6 S.W.3d at 466–67.[2]

Our criminal code defines carjacking as "the intentional or knowing taking of a motor vehicle from the possession of another by use of: (1) A deadly weapon; or (2) Force or intimidation." Tenn.Code Ann. § 39–13–404(a) (1997). Robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* § 39–13–401(a). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39–14–103. We have held that theft is a lesser-included offense of robbery under part (a) of the *Burns* test because all of its statutory elements are included within the statutory elements of robbery. *See State v. Bowles,* 52 S.W.3d 69, 79–80 (Tenn.2001). Theft requires an intent to deprive the owner of the property. Tenn.Code Ann. § 39–14–103 (1997). "Deprive" means to:

(A) Withhold property from the owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner;

(B) Withhold property or cause it to be withheld for the purpose of restoring it only upon payment of a reward or other compensation; or

(C) Dispose of property or use it or transfer any interest in it under circumstances that make its restoration unlikely[.]

*Id.* § 39–11–106(a)(8) (1997).

██ Carjacking does not require an intent to deprive another of his or her

---

**2.** Part (c) of the *Burns* test is inapplicable. Part (c) provides that an offense is a lesser-included offense if it consists of:

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or

(3) solicitation to commit the offense charged or an offense that otherwise meets

the definition of lesser-included offense in part (a) or (b).

*Burns,* 6 S.W.3d at 467. "Part (c) of the [*Burns*] test was meant to apply to situations in which a defendant attempts to commit, or solicits another to commit, either the crime charged or a lesser-included offense, but no proof exists of the completion of the crime." *State v. Ely,* 48 S.W.3d 710, 719 (Tenn.2001). Analysis under part (c) of the *Burns* test clearly is not required because the evidence does not involve proof of attempt, facilitation, or solicitation.

motor vehicle. Instead, the statutory definition of carjacking merely requires "the intentional or knowing taking of a motor vehicle from the possession of another by use of: (1) A deadly weapon; or (2) Force or intimidation." *Id.* § 39–13–404(a) (1997). In other words, carjacking only requires proof that the defendant took a motor vehicle from the possession of another. Nothing in the plain language of our carjacking statute requires proof that the defendant took the vehicle with an intent to deprive the owner of the property. *Compare* Tenn.Code Ann. § 39–13–404(a) *with* § 39–14–103. Under our statutory definition of carjacking, the motive for the taking is irrelevant, and therefore carjacking prosecutions do not include the burden of proving an intent to deprive the victim of the vehicle. *Cf. People v. Davenport,* 230 Mich.App. 577, 583 N.W.2d 919, 921 (1998) (concluding that Michigan's legislature intended to make it easier to obtain carjacking convictions by purposely omitting specific intent as an element of the offense of carjacking). Thus carjacking is not a taking within the meaning of theft, which requires that the taking be with an intent to deprive the owner of the property. *See United States v. Moore,* 73 F.3d 666, 669 (6th Cir.1996) (noting that the federal offense of carjacking does not require an intent to permanently deprive a victim of a motor vehicle as part of the "taking" element); *Harris v. Maryland,* 353 Md. 596, 728 A.2d 180, 187 (1999) (concluding that Maryland's carjacking statute, which does not include any language with regard to intent, requires only proof that the defendant possessed the general criminal intent to obtain unauthorized possession or control from a person in actual possession by force, intimidation, or threat of force). The definition of theft, therefore, contains a statutory element not included within the statutory elements of carjacking, and for that reason theft is not a lesser-included offense of carjacking under part (a) of the *Burns* test.

Furthermore, theft's additional element of an intent to deprive the owner of the property does not reflect "a different mental state indicating a lesser kind of culpability" or establish "a less serious harm or risk of harm to the same person, property or public interest" as contemplated by part (b) of the *Burns* test. 6 S.W.3d at 467. The statutory element of an intent to deprive the owner of property does not reflect lesser culpability than taking a vehicle from the possession of another. Nor do we conclude that it represents "a less serious risk of harm." Because robbery includes all of the elements of theft within its statutory elements, robbery is also not a lesser-included offense of carjacking. Accordingly, we hold that the trial court's failure to charge theft and robbery as lesser-included offenses of carjacking was not plain error.

## III. Conclusion

We hold that the evidence is sufficient to sustain Wilson's convictions for carjacking and reckless endangerment. We further hold that robbery and theft are not lesser-included offenses of carjacking and that therefore the failure to give instructions with regard to these offenses was not plain error. Accordingly, we affirm the judgment of the Court of Criminal Appeals. It appearing that the defendant, Joseph Wilson, is indigent, the costs of his appeal are taxed to the State of Tennessee.