# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 6, 2012

## STATE OF TENNESSEE v. CYNTHIA DENISE GRAY

**Appeal from the Circuit Court for Bedford County**
**No. 17171      Lee Russell, Judge**

---

**No. M2011-02753-CCA-R3-CD - Filed February 4, 2013**

---

A jury convicted the defendant, Cynthia Denise Gray, of one count of the promotion of the manufacture of methamphetamine, a Class D felony, in violation of Tennessee Code Annotated section 39-17-433 (2010). The trial court sentenced her to serve three years and six months in prison as a Range I standard offender. The defendant challenges the sufficiency of the convicting evidence and the length of the sentence, as well as the trial court's refusal to impose an alternative sentence. Having reviewed the record, we conclude that the evidence is sufficient and that there was no error in sentencing. Accordingly, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JERRY L. SMITH and ALAN E. GLENN, J.J., joined.

Donna L. Hargrove, District Public Defender; and Michael J. Collins, Assistant District Public Defender, for the appellant, Cynthia Denise Gray.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Robert Carter, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual and Procedural History

The defendant's conviction for the promotion of the manufacture of

methamphetamine arose as the result of her involvement in the purchase of pseudoephedrine pills from a pharmacy in Bedford County. The pharmacy contacted law enforcement, and the defendant and her companion, Edward Lee, were arrested after officers discovered items related to the use and manufacturing of methamphetamine in Mr. Lee's vehicle.

At trial, the State presented the testimony of Shane George, a special agent with the Shelbyville Police Department, who was assigned to the Drug Task Force and primarily investigated methamphetamine violations. Agent George testified that pseudoephedrine is a necessary ingredient in the manufacture of methamphetamine. He testified that he maintained contact with local pharmacies in an effort to target persons who were purchasing pseudoephedrine. According to Agent George, persons involved in the manufacture of methamphetamine would sometimes try to avoid observation by buying it outside the county of their residence.

Agent George received a call from a pharmacy on October 21, 2010 regarding the defendant. The pharmacy reported that the defendant was acting suspiciously and was purchasing a box of pseudoephedrine with an out-of-county driver's license. Agent George and two other plainclothes agents went to the pharmacy and watched the defendant, carrying her purchase, leave the store and approach a van with her companion, Mr. Lee. Mr. Lee took the bag containing the pills from the defendant, pried open the back of the glove compartment, and put the pills behind the glove box while the defendant stood in the open passenger door, watching. He closed the glove compartment, and he and the defendant walked to a dollar store in the same strip mall.

Agent George followed the defendant and Mr. Lee into the dollar store, where they shopped for groceries and then approached a battery display by the checkout stand. Mr. Lee took batteries from the display. Agent George approached the display and determined it did not have any lithium batteries, which are a component in the manufacture of methamphetamine. Agent George stood in line behind the defendant and Mr. Lee, who put the batteries on the conveyor belt. Mr. Lee then told the defendant he had picked up the wrong batteries and returned them to the display. After the defendant and Mr. Lee left the store, Agent George consulted with the clerk and determined that they had not purchased anything related to the manufacture of methamphetamine.

Mr. Lee drove away with the defendant in the car, and after Agent George determined through a records check that Mr. Lee's license was suspended or revoked, he conducted a traffic stop.[1] During the stop, Mr. Lee consented to a search of the vehicle. In addition to

---

[1]Agent George also testified regarding a traffic violation Mr. Lee committed when an undercover
(continued...)

-2-

the pseudoephedrine in the space behind the glove compartment, Agent George discovered various receipts with different dates and from different stores for the purchase of items used in the manufacture of methamphetamine, including other pseudoephedrine pills. He also collected a pharmacy card for pseudoephedrine, explaining that methamphetamine offenders frequently would take the card from the store and present it to the pharmacy at a later date in order to expedite the purchase. Agent George found lithium batteries and a piece of aluminum foil which had been fashioned to allow for its use as a device to smoke methamphetamine.

Agent George testified that ninety-five percent of the time, methamphetamine manufacturers would get other individuals to purchase the components in order to avoid being tracked by law enforcement. He also testified that the individuals procuring ingredients would go to multiple stores and tended to avoid purchasing more than one ingredient at a time. Frequently, the items would then be bartered in exchange for finished methamphetamine.

Agent George testified that during the traffic stop, he had advised the defendant of her rights and then had questioned her about her purchase. He testified that the defendant told him "that she had purchased the tablets under the direction of Mr. Lee and that she had knowingly gone in and purchased them, knowingly delivered them to Mr. Lee, and she knew that Mr. Lee was going to take them and deliver them to another individual, who[m] she knew, and that individual was going to use them to manufacture methamphetamine." On cross-examination, Agent George testified that he did not record the conversation with the defendant because he did not have recording equipment at the time. He testified that although the defendant did not have anything on her person related to the manufacture of methamphetamine, she had handled the lithium batteries which were in the car's center console during the traffic stop; however, Agent George later testified he did not personally witness the defendant handle the batteries. He acknowledged that he did not include the fact that she handled the batteries in his case narrative. On re-direct examination, Agent George identified the arrest log which listed the defendant as having an address outside the county. On re-cross-examination, Agent George identified an in-county driver's license for the defendant and testified that some methamphetamine offenders would carry more than one license. He testified that he could not recall whether the license she showed him that day had an in-county address.

The State next presented the testimony of Travis Childers, another agent with the 17th Judicial District Drug Task Force. Agent Childers testified that he saw Mr. Lee and the

---

[1](...continued)
police car drove slowly in front of him in the right-hand lane.

defendant, with her purchase, leave the pharmacy and go up to the passenger's side of Mr. Lee's vehicle and that he saw Mr. Lee "messing with" the glove compartment. When they went toward the dollar store, the defendant no longer had her purchase from the pharmacy. Agent Childers testified that he stood outside the open passenger's side door during the traffic stop and that he witnessed the defendant, who was unaware of his presence, move aside a cigarette lighter and begin to pick up lithium batteries from the console. He testified that when he asked her what she was doing, she froze, put down the batteries, picked up a lighter, and told him she was looking for a cigarette lighter. Agent Childers told Agent George about the batteries when Agent George came to interview the defendant, and he overheard Agent George advise her of her rights.

The defendant's daughter, Cynthia Cook, testified regarding the defendant's visit to Bedford County. Ms. Cook testified that the defendant generally came into the county to visit her each weekend, and that the defendant had been staying with her for a few days up until the day of the arrest. The defendant's visit was prompted by Ms. Cook's brother having a vacation from school. Ms. Cook testified that the defendant had lived in Shelbyville up until about a year prior to her arrest but that she lived in Cannon County at the time of the arrest. Ms. Cook testified that on the day of the arrest, the defendant had wanted to visit a friend named Linda. Ms. Cook was unable to take her, and instead the defendant went with Ms. Cook to the hospital where Ms. Cook's mother-in-law was having surgery. Ms. Cook testified that Mr. Lee then telephoned and volunteered to take the defendant to visit Linda.

The defendant did not testify. The jury found her guilty of one count of the promotion of the manufacture of methamphetamine. At the sentencing hearing, the trial court found that the defendant was a Range I offender and found that the sentence should be enhanced based on a previous history of criminal convictions, a prior failure to comply with the conditions of a sentence involving release, and the fact that the defendant was on bond when the purchase took place. The court found no mitigators, although it noted that an argument could be advanced that the criminal conduct neither caused nor threatened serious bodily harm. The court concluded it did "not give any great weight" to that as a mitigator and sentenced the defendant to three years and six months of prison. The trial court ordered the sentence to run consecutively to her prior convictions based on her extensive criminal record. The trial court found that the defendant should not receive an alternative sentence based on a lack of potential for rehabilitation, citing a prior probation violation and the fact that the defendant was out on bond when she committed the offense. The court noted that "she would be a very high risk to recommit if on bond." The defendant appeals, contending that the evidence was insufficient to support her conviction, that the sentence was excessive, and that the trial court should have given her an alternative sentence.

## II. Analysis

## A. Sufficiency of the Evidence

Rule 13(e) of the Tennesee Rules of Appellate Procedure directs the appellate court to set aside a verdict of guilt in a criminal action if the evidence is insufficient to support the finding of guilt beyond a reasonable doubt. In reviewing the sufficiency of the evidence, the appellate court does not determine whether it believes the evidence is sufficient to prove guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). Neither may the court re-weigh the evidence or substitute its inferences for those drawn by the trier of fact. *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999). Instead, the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. A guilty verdict replaces the presumption of innocence with a presumption of guilt. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). On appellate review, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn from it. *State v. Wilson*, 211 S.W.3d 714, 718 (Tenn. 2007). A guilty verdict accredits the testimony of the State's witnesses and resolves all conflicts of evidence in the State's favor. *Id.* "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *Bland*, 958 S.W.2d at 659. In weighing the sufficiency of the evidence, circumstantial and direct evidence are treated the same, and the State is not required to exclude every reasonable hypothesis other than that of guilt. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011). The defendant bears the burden of showing that the evidence is insufficient. *State v. Franklin*, 308 S.W.3d 799, 825 (Tenn. 2010).

Tennessee Code Annotated section 39-17-433 makes it an offense for a person to promote the manufacture of methamphetamine. The statutory definition of the promotion of methamphetamine manufacture includes the actions of an individual who:

> (1) Sells, purchases, acquires, or delivers any chemical, drug, ingredient, or apparatus that can be used to produce methamphetamine, knowing that it will be used to produce methamphetamine, or with reckless disregard of its intended use.

T.C.A. § 39-17-433(a)(1).

The defendant contends that the evidence proving her mens rea was insufficient. The evidence at trial, taken in the light most favorable to the State, established that the defendant purchased pills containing pseudoephedrine, an ingredient of methamphetamine, at the pharmacy. The defendant watched Mr. Lee hide the pills in the void behind the glove

compartment and heard Mr. Lee announce that he had taken the wrong batteries from the dollar store. During the traffic stop, the defendant moved a cigarette lighter out of the way in order to pick up lithium batteries, which are also used in the manufacture of methamphetamine, from the center console. When the defendant became aware she was observed, she "froze" and then put down the batteries and stated she was looking for a cigarette lighter. In addition to this circumstantial evidence regarding the defendant's mental state, Agent George testified that the defendant told him she "knew that Mr. Lee was going to take [the pills] and deliver them to another individual … and that individual was going to use them to manufacture methamphetamine." The jury's verdict accredits the testimony of Agent George that the defendant knew the pills would be used to manufacture methamphetamine. Contrary to the defendant's assertion, Agent George did not have to introduce a written statement or audio recording of the defendant's confession. The evidence was sufficient to support the conviction.

### B. Excessive Sentence

The defendant also challenges her sentence as excessive and contrary to law. The defendant contends that the sentence is not "justly deserved in relation to the seriousness of the offense" and that it is "greater than that deserved for the offense committed" and not the least severe measure necessary to achieve the sentence's purposes. *See* T.C.A. §§ 40-35-102(1), -103(2), -103(4).

A criminal defendant may appeal the length, range, or manner of service of a sentence. T.C.A. § 40-35-401(a). The appeal may be based on the contention that the sentence is not imposed in accordance with the Sentencing Act; that the sentence is excessive under Tennessee Code Annotated sections 40-35-103 and -210; or that the sentence is inconsistent with the purposes of sentencing set out in Tennessee Code Annotated sections 40-35-102 and -103. T.C.A. § 40-35-401(b).

The Tennessee Supreme Court, in *State v. Bise*, concluded that the 2005 Amendments to the Sentencing Act required an abuse of discretion standard of review of sentences, with a presumption of reasonableness granted to within-range sentences reflecting a proper application of the purposes and principles of the Sentencing Act. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). Under *Bise,* "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." *Id.* at 706. The Court explicitly applied this standard of review to alternative sentencing in *State v. Caudle*, No. M2010-01172-SC-R11-CD, 2012 WL 5907374, at *5 (Tenn. Nov. 27, 2012) ("[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to

probation or any other alternative sentence.").

In determining "the specific sentence and the appropriate combination of sentencing alternatives," the trial court must consider: (1) the evidence at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the applicable mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing. T. C. A. § 40-35-210(b).

Here, the trial court properly considered the purposes and principles of sentencing, weighing the enhancing and mitigating factors in determining the length of the sentence within the appropriate range. The trial court also considered the statement in Tennessee Code Annotated § 40-35-102(6)(A) that a standard offender convicted of a Class D felony should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. The statute states that the court "shall consider, but is not bound by" this guideline, and the trial court found that the defendant would not be a favorable candidate based on her failure to abide by the prior conditions of her release into the community. T.C.A. § 40-35-102(6)(D). In essence, the defendant argues that she should have received an alternative sentence for her crime because it was nonviolent. However, the Legislature has made the offense one punishable by imprisonment, and we cannot say that the trial court abused its discretion in assigning a sentence within the range after considering the purposes and principles of the Sentencing Act. Accordingly, we conclude there was no error.

## CONCLUSION

Because the evidence was sufficient to support the conviction and because the trial court did not abuse its discretion in imposing the sentence, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE