IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 22, 2025 at Knoxville

## STATE OF TENNESSEE v. TRAVIS MICHAEL BARNETT

**Appeal from the Circuit Court for Tipton County**
**No. 11079    A. Blake Neill, Judge**

———————————————————

### No. W2024-00703-CCA-R3-CD

———————————————————

After a bench trial in the Tipton County Circuit Court, the Defendant, Travis Michael Barnett, was convicted of one count of theft of property valued at $10,000 or more but less than $60,000, and the trial court imposed a six-year sentence as a Range II multiple offender with a 35% release eligibility. On appeal, the Defendant argues that the evidence is insufficient to support his conviction. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

STEVEN W. SWORD, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR. and TIMOTHY L. EASTER, JJ., joined.

William W. Gill, Assistant Public Defender – Appellate Division, Tennessee District Public Defenders Conference (on appeal); Bo Burk, District Public Defender; and Melissa Downing, Assistant District Public Defender (at trial), for the appellant, Travis Michael Barnett.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin Ball, Senior Assistant Attorney General; Mark Davidson, District Attorney General; and James Walter Freeland, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.    FACTUAL AND PROCEDURAL HISTORY

This case arises from the Defendant's January 28, 2023 arrest in the parking lot of the Covington Home Depot store in relation to the theft of a 2023 Toyota RAV4. Subsequent to his arrest, the Defendant was indicted by a Tipton County Grand Jury for one count of theft of property valued at $10,000 or more but less than $60,000. The Defendant waived his right to a jury trial on March 27, 2024, and this matter proceeded to a bench trial on the same day. The following evidence was presented at trial.

## A. STATE'S PROOF

Without objection, the State first played[1] and entered into evidence a video recording taken from Covington Police Department ("CPD") Sergeant Nelson's[2] body camera depicting three CPD officers responding to a parked, black Toyota RAV4 in the Covington Home Depot parking lot in Tipton County. Corporal Russell Guarian identified himself, Sergeant Nelson, and Officer McBee in the video. Corporal Guarian identified the Defendant as the person in the body camera video and as the person he observed inside the RAV4 and who gave him the keys to the vehicle.

Corporal Guarian testified that he noticed a RAV4 in the Covington Home Depot parking lot on January 28, 2023, at approximately 9:00 a.m.[3] and called for additional officers. He further stated he pulled his vehicle in front of the RAV4, so the Defendant could not attempt to leave. Other officers arrived quickly, and the Defendant never tried to exit the vehicle or run away. The video depicted the officers' vehicles pulling up to a black Toyota RAV4 with no license plate. Sergeant Nelson instructed the Defendant, who was seated in the vehicle, to exit the vehicle with his hands up and to follow Corporal Guarian's instructions. Initially, Corporal Guarian and Sergeant Nelson advised the Defendant he was not under arrest, but he was being detained until the officers got "this matter figured out." Corporal Guarian testified that the Defendant seemed a little confused and startled when Corporal Guarian pulled in front of the Defendant in the parking lot. The Defendant was handcuffed. Sergeant Nelson "called in" the vehicle's identification number and subsequently learned that the vehicle had been reported as stolen from Jackson. The officers asked the Defendant if he knew anything about the vehicle being reported as stolen, and he replied that he worked for Avis and was transporting the vehicle from Jackson to Memphis. The Defendant wore a shirt and a jacket with "Avis" imprinted on them. The Defendant was placed in one of the police vehicles.

---

[1] The video was played from the beginning and stopped at minute 21:22.

[2] Sergeant Nelson and Officer McBee did not testify at trial. Because the trial transcript does not refer to the first names of either of these officers, we refer to these two officers without reference to first names.

[3] Corporal Guarian testified that the incident report indicated the officers encountered the Defendant at 9:00 a.m. The incident report is not included in the appellate record.

Subsequently, as heard on the video, dispatch provided specific information to Sergeant Nelson that the vehicle was stolen at 9:10 p.m. on January 26, 2023, and a description of the suspect. Sergeant Nelson searched the RAV4 and located the Defendant's cell phone, as well as various food and other garbage-type items. Corporal Guarian testified that the Defendant advised him that his phone was out of minutes. The Defendant did not provide consent to search his phone. Corporal Guarian testified he thought the Defendant had been sleeping in the vehicle based upon the items found inside it.

Corporal Guarian testified that the Defendant told him that he worked for Avis in Jackson, but he had no form of identification. Corporal Guarian recalled that the Defendant first provided his name as Trevor Barnett, rather than as Travis Barnett, and that he had no paperwork related to the vehicle. Corporal Guarian admitted the Defendant was soft spoken and was difficult to understand on the video, but he was certain the Defendant had initially provided the wrong name. Corporal Guarian testified that the Defendant recited a driver's license number, which came back as Travis Barnett. Corporal Guarian also testified that Sergeant Nelson called Avis in Jackson to verify the Defendant's employment and that the Defendant did not seem surprised when Avis said he was not an employee. The video also included Sergeant Nelson's communications with Avis.

Corporal Guarian testified that he advised the Defendant of his *Miranda* rights and gave him an opportunity to make a statement, but the Defendant indicated he did not want to talk. Corporal Guarian stated that the Defendant was taken into custody; however, he did not follow up on the case after the Defendant was arrested and was unaware whether anyone from the CPD followed up on the Defendant's case after his arrest. Corporal Guarian testified that detectives in Jackson would have investigated the theft of the vehicle because it occurred there. Corporal Guarian stated that a representative from Robinson Toyota, the presumed owner, subsequently came to Covington and picked up the RAV4 vehicle.

Carl Alexander testified he was part of a two-person team sent by Robinson Toyota in Madison County to pick up a 2023 Toyota RAV4 from the Home Depot in Covington on Monday, January 30, 2023. He explained that he did not work directly for Robinson Toyota but was a third-party contractor to Toyota and that there had been approximately ten people doing this type of work for Robinson Toyota at the time. The only name Mr. Alexander could recall for the other member of the two-person team was "Nicky." Mr. Alexander testified that he met law enforcement at the Covington Home Depot to pick up the vehicle. He further testified that, after he provided proper identification, they gave him the key to the vehicle.

Mr. Alexander testified that the vehicle had limited operating functions when he retrieved it because it was in "valet mode." He also testified that he filled the vehicle with gasoline because it was only approximately two miles from running out of gas when he picked it up. Mr. Alexander indicated he had no knowledge of other thefts of vehicles from Robinson Toyota during the same timeframe as the theft of the RAV4, and he had never met the Defendant.

Christopher Ward testified he worked at Robinson Toyota and that on January 26, 2023, the dealership discovered that the 2023 Toyota RAV4, valued at $33,235, was missing. Once discovered, personnel at Robinson Toyota reported the missing vehicle to the Jackson Police Department. Mr. Ward stated the vehicle had been delivered to Robinson Toyota after 3:00 p.m. on January 23, 2023. Security footage showed the RAV4 was taken from the lot on January 23, 2023, at 9:10 p.m. by an African American male, who was "slim fit." He testified that the RAV4 was parked with other new vehicles at the back of the lot awaiting inspection and that the dealership's lot was not secured at night. Because it had not yet been inspected, the RAV4 was still in valet mode. Mr. Ward testified that when the vehicle was delivered, the delivery driver left the keys in the cup holder for the service department to use in a pre-delivery inspection that would have taken the vehicle out of valet mode and into drive mode. Mr. Ward explained that valet mode disables certain safety features on the vehicle, such as the door locks, the radio, and steering assist. He explained there would have been stickers and plastic all over portions of the vehicle.

Mr. Ward testified that the stolen vehicle was never involved with or connected to Avis, but the vehicle was delivered to Robinson Toyota for sale to a specific individual. He agreed that the specific individual made either some sort of down payment or signed a commitment to buy the vehicle in order to get the car delivered to the lot. Mr. Ward stated that the Defendant never had consent from Robinson Toyota to test drive the vehicle, to have possession of the vehicle, or to exercise control over the vehicle. After notifying the local police of the theft, the dealership was unaware of the vehicle's status until the CPD contacted the Jackson Police Department to report that the vehicle had been recovered in Covington. The dealership then planned for the RAV4 to be picked up. Mr. Ward recalled that Mr. Alexander was one of the drivers in the two-person team sent to pick up the vehicle, but he stated he had not looked up the other driver's name. Mr. Ward testified that the RAV4 was picked up and returned to Robinson Toyota on Monday, January 30, 2023. He stated that when it was returned to the dealership, some of the stickers and plastic were still on the vehicle, but others had been removed. The vehicle was sold later that same day, so no restitution or insurance claim was made related to the stolen vehicle.

A photograph of a recently delivered car to the dealership was introduced to demonstrate how new vehicles appear before inspection. Mr. Ward testified that the RAV4 would have normally been inspected the day it was dropped off. However, the delivery

driver did not specify the vehicles dropped off on that date, so it was overlooked. Another photo was introduced to demonstrate how the exterior windshield of a "fleet" vehicle would appear when it arrived at the dealership, featuring a fleet sticker on the windshield. Mr. Ward testified that a "fleet vehicle is a leased vehicle that is identified by [an] orange or yellow sticker in the windshield. It is not located anywhere in our inventory, and we have designated areas for those vehicles. We are to license plate them, [and] title them before delivering them to lease companies." Mr. Ward testified that the RAV4 would have had a fleet sticker on it when it arrived on the lot, but it did not have the sticker when it was picked up from the CPD. He further stated the RAV4 did not have a tag or license plate when taken from the lot, and it did not have one when it was returned. Mr. Ward testified that fleet vehicles were bought from the manufacturer and that the dealership does not know when the vehicles will arrive prior to their delivery; the lease companies notify the dealership that their vehicle is "being landed," and the lease company sends the dealership the temporary title, along with information concerning who will be picking up the vehicle and whether the dealership is to title the vehicle or simply release it. Mr. Ward stated that fleet vehicles are not actually owned by the dealership, but rather the dealership acts as a caretaker for the vehicles from the manufacturer to the customer.

The State rested.

## B. DEFENSE PROOF

The Defendant testified that he had been staying at the home of someone he knew in Covington. While out walking in the area, he came upon the RAV4 in the Covington Home Depot parking lot and entered the vehicle. He testified he had not been sleeping in the vehicle and had never driven it. He initially stated that he told the officers he was working for Avis because he was wearing the jacket but later testified that he wore the Avis jacket because it was cold, and he had received it from his previous temporary employment with Avis. The Defendant further testified that he had provided both his correct name and driver's license number to Corporal Guarian, but Corporal Guarian must have misunderstood.

On cross-examination, the Defendant agreed it was a violation of his Madison County probation to be in Covington. The Defendant agreed he had prior convictions for burglary in Davidson County in 2021 and for burglary and theft of property over $1000 in Madison County in 2021. He stated that he was not afraid of returning to Madison County or of a potential probation violation and that no one had offered to take him to Madison County since his arrest.

When asked with whom he stayed in Covington, the Defendant first stated it was someone he had only recently met. He then said he would rather not disclose who it was

- 5 -

because it was not relevant, and then stated he did not know, before finally admitting he knew the name but just did not want to say it. He testified similarly about the address of the place where he had stayed in Covington; he then stated he did not know the address or the area, but only that it was an apartment. The Defendant stated someone drove him from Jackson to Covington for an "overnight type of thing" but not in the RAV4, and he did not know the name of the person who drove him. He denied that anyone he traveled with was involved in the theft of vehicles. He testified he met the people at a "get-together" to which he had walked to but could not say more than that it was in Tennessee. He also stated that he could not recall where he walked from to attend the "get-together."

The Defendant stated his education level was a GED and some community college. He testified that he attended Jackson State Community College in 2012 but could not recall where he had lived at that time. He stated he had lived in Jackson his whole life. He then provided an address on Jackson Street in Jackson as the last address he could recall, stating that he thought it was from around 2016. He testified he could not remember any address since that time. He agreed that he had to provide his probation officer with an address and stated that he had probably given the Jackson Street address, but he averred that he did not recall what he had reported as his address. The Defendant did not respond when asked if he told the probation officer the truth or a lie.

When asked where his Avis apparel came from, the Defendant stated that he obtained it from Avis in Jackson a few years ago, when he worked for them, earning $80 to move a vehicle from one location to another. He stated it was "quick money," and he never went inside Avis. He agreed he had gone to a lot in Jackson, picked up a vehicle, and taken it somewhere else. He denied that the lot was Robinson Toyota, but he testified he did not recall the name of the lot. He stated he spoke to someone in Avis attire at the lot. He refused to provide the name of the person who had taken him to the lot. The Defendant admitted he lied to the Covington officers when he claimed he was taking the RAV4 from Jackson to Memphis for Avis.

The Defendant stated that the only jail call he made was to his mother and that he had not called any of the people whose names he did not want to provide. When asked how he made money to survive, the Defendant stated, "I do what I can to make money." The Defendant denied having made any money for transporting the RAV4.

During the redirect examination, the Defendant first denied having lived at an address on Park Ridge in Jackson but then agreed that he had lived there and may have provided the address to his probation officer. Upon recross examination, the Defendant stated that he thought he had lived in an apartment on Park Ridge for about a year, around the time he was attending community college. He could not recall the rent amount for the apartment, and he stated that he paid by direct deposit but could not recall the name of the

bank he used. He stated that his source of income was "gigs and jobs," as well as seasonal work. During the redirect examination, he further indicated that he worked at Dunkin' Donuts in 2014 and 2015, as well as at Jason's Deli, and supported himself financially by living on student loans while attending community college.

The Defendant rested. After closing arguments, the trial court convicted the Defendant of theft of property as charged in the indictment. The trial court sentenced the Defendant to serve a six-year, Range II sentence at 35% release eligibility. Following the denial of his motion for new trial, the Defendant filed this timely appeal.

## II. ANALYSIS

On appeal, the Defendant asserts that the evidence is insufficient to prove that he exercised control over a vehicle owned by Robinson Toyota or that there was no effective consent from any owner of the vehicle. The Defendant claims the State failed to prove that Robinson Toyota owned the stolen vehicle in question, thereby creating a fatal variance between the indictment and the proof. The State responds that the evidence demonstrated that Robinson Toyota was the owner of the vehicle, and thus, the evidence is sufficient to support the Defendant's conviction beyond a reasonable doubt. In addition, the State asserts that even if a variance existed, it was not fatal.

"Findings of guilt in criminal actions . . . shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). The standard of appellate review on a challenge to the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citations omitted) (emphasis in original); *see also State v. Williams*, 558 S.W.3d 633, 638 (Tenn. 2018). The verdict of a trial judge in a bench trial is entitled to the same weight on appeal as a jury verdict. *See State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999).

A conviction "removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982); *see also State v. Thomas*, 687 S.W.3d 223, 249 (Tenn. 2024) (citing *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000)). "On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom." *State v. Wilson*, 211 S.W.3d 714, 718 (Tenn. 2007) (citing *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999)). "We do not reweigh the evidence, because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the . . . trier

of fact." *State v. Curry*, 705 S.W.3d 176, 183 (Tenn. 2025) (citations omitted). The same standard of review applies "whether the conviction is predicated on direct or circumstantial evidence, or a combination of both." *Williams*, 558 S.W.3d at 638 (first citing *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011), and then citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977)).

The indictment in this case read as follows:

> TRAVIS MICHAEL BARNETT, on or about January 28, 2023, in Tipton County, Tennessee, and before the finding of this indictment, did unlawfully, feloniously and knowingly exercise control over property to-wit: a 2023 Toyota Rav4, a more particular description thereof being to the Grand Jurors unknown, valued at ten thousand dollars ($10,000) but less than sixty thousand dollars ($60,000), of Robinson Toyota without its effective consent, with the intent to deprive said Robinson Toyota thereof, in violation of T.C.A. 39-14-103, against the peace and dignity of the State of Tennessee.

The Defendant was convicted, as charged, of theft of property valued at $10,000 or more but less than $60,000. Tenn. Code Ann. §§ 39-14-103, -105. "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a).

The Defendant argues that the evidence is insufficient to establish that Robinson Toyota was the owner of the stolen vehicle; thus, the evidence is insufficient to establish that he exercised control over a vehicle owned by Robinson Toyota or that there was no effective consent from any owner of the vehicle. In addition, the Defendant claims the evidence in the case does not correspond to the elements alleged in the indictment and that this created a fatal variance related to the owner of the vehicle. The Defendant asserts that the evidence at trial established that Robinson Toyota did not own the stolen vehicle, actually possess the stolen vehicle, or constructively possess the stolen vehicle because it was a "fleet" vehicle, and no one at Robinson Toyota was aware of the vehicle's presence on the lot prior to it being taken. The Defendant argues, as a result, Robinson Toyota had not exercised control over the vehicle and could not provide effective consent; thus, the Defendant asserts there is a fatal variance. Both the Defendant's argument concerning the sufficiency of the evidence and his assertion of a fatal variance are based upon his contention that Robinson Toyota was not an owner of the vehicle pursuant to the theft statute.

However, the appellate courts "ha[ve] interpreted the definition of 'owner' within the meaning of the theft statute to extend to a variety of interests 'broader than its commonly understood meaning.'" *State v. Bennett*, No. W2019-00937-CCA-R3-CD, 2020 WL 4036648, at *4 (Tenn. Crim. App. July 16, 2020) (concluding that the victim was the owner because she constructively possessed the package, which was addressed to her and left on the doorstep of her home) (quoting *State v. Fleshman*, No. E2013-00557-CCA-R3-CD, 2014 WL 2804183, at *5 (Tenn. Crim. App. June 18, 2014), *perm. app. denied* (Tenn. Nov. 21, 2014)), *no perm. app. filed*. "Owner" is defined as "a person,[4] other than the defendant, who has possession of or any interest other than a mortgage, deed of trust or security interest in property, even though that possession or interest is unlawful and without whose consent the defendant has no authority to exert control over the property[.]" Tenn. Code Ann. § 39-11-106(a)(29). An owner's possession of property may be actual or constructive. *State v. March*, 293 S.W.3d 576, 592 (Tenn. Crim. App. 2008). "'[E]vidence of possession is ordinarily sufficient proof of ownership; and this is true although the one in possession may have held the property as bailee, trustee, or otherwise having only a special interest, and not a general ownership of the property.'" *Bennett*, 2020 WL 4036648, at *4 (quoting *State v. Bush*, No. M2002-02390-CCA-R3-CD, 2004 WL 794755, at *7 (Tenn. Crim. App. Apr. 14, 2004), *perm. app. denied* (Tenn. Oct. 4, 2004)).

The evidence in this case established that the 2023 Toyota RAV4 was delivered to the Robinson Toyota lot on January 23, 2023, at some time after 3:00 p.m. While the delivery driver followed the normal protocols for dropping off new vehicles, they failed to notify Robinson Toyota of the presence of this vehicle. As a result, Robinson Toyota overlooked this vehicle's initial pre-delivery inspection on January 23, 2023, because it was not initially aware of the car's presence on the lot. On January 26, 2023, personnel at Robinson Toyota realized the RAV4 was missing from its lot. The security footage showed the vehicle had been taken on January 23, 2023, at approximately 9:10 p.m., which was after the business had closed and when no employees were present. The footage showed a slim African American male taking the vehicle. Mr. Ward, who worked at Robinson Toyota, testified that the vehicle was valued at $33,235 and that the Defendant did not have the effective consent of Robinson Toyota to test drive the vehicle, to have possession of the vehicle, or to exercise control over the vehicle.

Corporal Guarian testified that the Defendant was in the RAV4 at the Covington Home Depot and provided the keys to the vehicle to him. The video from Sergeant Nelson's body camera included footage of the Defendant, which demonstrated he was an African American male with a slim build. Mr. Ward testified that the vehicle was delivered

---

[4] "Person . . . includes any individual, firm, partnership, copartnership, association, corporation, governmental subdivision or agency, or other organization or other legal entity, or any agent or servant thereof[.]" Tenn. Code Ann. § 39-11-106(a)(30).

to the dealership for sale to a specific party, who had either signed purchase paperwork or had made a down payment. Mr. Ward testified to the process such a vehicle undergoes at the dealership once it is delivered and the dealership's responsibility to perform an inspection of the vehicle, whether for sale to an individual or a corporate buyer. Once the vehicle arrived, the dealership maintained possession of the vehicle pending the final sale and transfer to the buyer. Mr. Ward referred to the dealership as the "caretaker" of the vehicle between the manufacturer and the customer. Thus, the evidence is sufficient to establish that Robinson Toyota owned the RAV4 and supports the Defendant's conviction of theft.

The Defendant also claims that the evidence is insufficient due to a fatal variance. "A variance results when the evidence at trial does not correspond to the elements of the offense alleged in the charging instrument." *March*, 293 S.W.3d at 588 (citing *State v. Keel*, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994)). A variance is not fatal if: "(1) the defendant is sufficiently informed of the charges levied against him so that he can adequately prepare for trial and, (2) the defendant is protected against a subsequent prosecution for the same offense based on double jeopardy grounds." *State v. Mayes,* 854 S.W.2d 638, 640 (Tenn. 1993). As noted above, the evidence is sufficient to establish Robinson Toyota's ownership of the RAV4, as a result, there was no variance between the indictment and the proof. The Defendant is not entitled to relief.

### III.   CONCLUSION

Following our review of the record and based upon the foregoing analysis, we affirm the judgment of the trial court.

s/ *STEVEN W. SWORD*
STEVEN W. SWORD, JUDGE

- 10 -