IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on briefs February 12, 2014

## STATE OF TENNESSEE v. WALTER LEE HICKS, JR.

**Appeal from the Circuit Court for Marshall County**
**No.  2012-CR-160    Robert Crigler, Judge**

_____

**No.  M2013-01410-CCA-R3-CD-Filed June 26, 2014**

_____

Appellant, Walter Lee Hicks Jr., was convicted by a Marshall County jury of numerous offenses that arose from an encounter with an officer of the Tennessee Highway Patrol.  The sentences imposed included four years for reckless endangerment with a deadly weapon, eight years for evading arrest and creating a risk of death and injury, and five years for giving a false report.  The trial court ordered that the sentences be served consecutively, with all remaining sentences to be served concurrently, for a total effective sentence of seventeen years at thirty-five percent.  Appellant argues (1) that the evidence was insufficient to support his convictions for reckless endangerment and giving a false report, and (2) that the sentence imposed was excessive and contrary to law.  After thoroughly examining the record, we find no error in either the verdicts or the sentence, and we affirm the trial court.  However, we remand to the trial court for correction of the judgment to reflect that Appellant's convictions for assault and felony reckless endangerment are merged.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed and Remanded.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JEFFREY S. BIVINS, JJ., joined.

Donna Orr Hargrove, District Public Defender and Michael J. Collins, Assistant Public Defender, for the appellant, Walter Lee Hicks, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Robert Carter, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

-1-

# OPINION

## *Factual Background*

Trooper John Judge is a Tennessee Highway Patrolman who was stationed in Marshall County at the time of the incident that gave rise to this appeal. On the evening of August 20, 2012, he was on duty with a radar gun on the southbound side of Highway 431. The posted speed limit at that location is 55 miles per hour. Sometime around 9:15 or 9:20 at night, the radar gun clocked an approaching car at 87 miles per hour. Trooper Judge activated the blue lights on his patrol car, and the speeding vehicle pulled over. When the blue lights came on, it automatically turned on the patrol car video camera.

The stopped vehicle was an orange Dodge Caliber with Florida plates. Trooper Judge observed two people in the car, both in the front seat. He exited the patrol car and approached the driver's side of the Dodge. He told the driver, Appellant, why he had stopped him. Appellant said he was sorry. Trooper Judge then asked to see a driver's license. Appellant said he had an Illinois license, but he was unable to produce it. Trooper Judge then asked Appellant for his name and date of birth. Appellant said his name was Stevie Hicks and he gave an inaccurate birth date. He was also asked for his social security number, but he said he didn't know it. Because Appellant claimed the car was a rental, Trooper Judge asked him for the rental contract, but Appellant was unable to produce it.

Trooper Judge then returned to his patrol car and tried to run the information Appellant had given him, using his computer and radio. He was unable to find a drivers license for the name and date of birth he had been given. He returned to Appellant's car and asked him to step out. The ignition key remained in the ignition of the rental car. Trooper Judge instructed Appellant to sit in the back seat of the patrol car while he tried once again to verify his identity. He tried several different spellings, and the dispatcher checked all fifty states, but they could not find a driver's license for Stevie Hicks.

Trooper Judge then opened the rear door of the patrol car and told Appellant to step out because he was going to be arrested for driving without a license. After briefly searching Appellant and finding and confiscating a box cutter, the trooper attempted to handcuff him. But Appellant pulled away from his grasp and ran from the passenger side of the patrol car to the front of the rental car, where Trooper Judge briefly lost sight of him in the dark shadows.

Trooper Judge drew his gun and advanced towards the driver's side of the rental car, ordering Appellant to show his hands and get down. But Appellant instead popped up, turned the corner to the driver's side of the rental car and opened the door to get in. The trooper testified that as he held the weapon in his left hand, he used his right arm to try to pull

-2-

Appellant out of the car. But Appellant somehow managed to get behind the wheel and start the car with the door still open and the trooper half in and half out of the car. At some point, the trooper switched his weapon from his left hand to his right hand. He said "[d]on't put that vehicle in drive and try to drive off and drag me, because I will shoot you." Appellant turned around and said "shoot me," threw the car into drive and took off. Trooper Judge testified that the next thing he remembered was lying in the middle of the highway firing shots towards the fleeing car. He got up, ran back to his patrol car and gave chase while radioing dispatch. The chase went on for over fourteen miles at speeds that averaged 92 miles per hour and sometimes exceeded 100 miles per hour. Appellant's driving was erratic. He drove on the wrong side of the road for a significant amount of time. There were other vehicles on the highway, and at one point Appellant came upon an oncoming vehicle while he was driving in the wrong lane, nearly causing a high-speed head-on collision. About a mile from the Fayetteville city limits, the road was blocked by line of patrol cars with their blue lights flashing. Appellant stopped his car and was ordered to step out. He crawled out of his car, covered in blood, and was taken into custody. The proof showed that he had been shot in the left arm.

*Jury Trial*

On October 24, 2012, the Marshall County Grand Jury returned an indictment against Appellant on multiple counts: one count of aggravated assault, one count of reckless endangerment, one count of evading arrest, one count of speeding, one count of driving on a suspended license and one count of filing a false report. Appellant pleaded not guilty to all charges, and on April 4 and 5, 2012, he was tried before a jury of twelve.

The first witness to testify was Trooper Judge. The above account of the events of August 20, 2012, was largely derived from his testimony. The video from the patrol car's dashboard camera was entered into evidence and was shown to the jury. Trooper Judge was questioned closely on cross-examination about the events that occurred between the moment that Appellant pulled free of his grasp and the moment he found himself lying on the highway firing shots.

The trooper testified that he drew his gun because he thought Appellant might have access to a weapon, and he was in fear for his life. He also testified that while he remembered threatening to shoot Appellant if he tried to drive off and drag him along, he didn't remember actually pulling the trigger. He testified that when he found himself lying on the asphalt, his left leg and left arm were injured, his uniform pants were torn and his shoes were scuffed. The shoes he wore on that day were entered into evidence.

The woman who had been riding as a passenger with Appellant at the time of the incident, Brittnay Benford, testified that she heard the initial exchange between Trooper

Judge and Appellant, and that she knew Appellant's real name. Ms. Benford stated that his friends sometimes called him Video but, to her knowledge, he had never gone by the name of Stevie Hicks. She also testified that she never left the front seat of the rental car, but she saw and heard at least part of the scuffle between Appellant and Trooper Judge, during which she was yelling at both of them to stop. She further testified that Trooper Judge had his hands either on Appellant or on the car as he was trying to prevent Appellant from driving away, and that as Appellant sped away she kept telling him to stop.

After that testimony, the prosecution had her read from a statement she had given to another officer on the morning after the incident:

> Video was able to get back inside the vehicle on the driver's side and the officer had a hold of him while Video was sitting in the driver's seat. I heard the officer tell Video to stop or he would shoot him. Video told him to go ahead and shoot him. The officer had the gun pointed at Video, but still did not shoot. Video got the car started and put the car in drive and drove off. The officer was still hanging on to Video inside the vehicle, and was telling Video to stop the car. But he did not and dragged the officer. That was when the officer shot at Video. The officer was able to let go and then ran back to his police car and chased us. I did not realize that Video had been shot until we drove down the road a ways and he said that he had been shot.

The State subsequently called more than ten law enforcement officers as witnesses, each of whom testified about his role in the arrest and interrogation of Appellant and/or the collection and processing of evidence connected with the incident that led to the arrest. The witnesses included members of the Fayetteville Police Department, the Petersburg Police Department, the Lincoln County Sheriff's Department, the Tennessee Highway Patrol, and the Tennessee Bureau of Investigation ("TBI"). Each of the officers identified Appellant.

Their testimony showed that after Appellant exited his car, he was life-flighted to Vanderbilt Medical Center to be treated for the wound to his arm. Trooper Judge went to the Marshall County Hospital where he was treated for abrasion injuries to his arm, leg and hand and then released. Several hours after being treated at Vanderbilt, Appellant was returned to Marshall County, where he was arrested and jailed. His car was impounded and sent to the TBI Crime Laboratory. No weapon was found in the car, but a fired bullet was extracted from the area beneath the steering column. The state does not allege that the defendant was armed at the time of the traffic stop. Five shell casings from Trooper Judge's weapon were photographed in place, then collected and sent to the crime laboratory.

Sergeant Larry Pollard of the Tennessee Highway Patrol testified that he was assigned

-4-

to interview Appellant in his hospital room at Vanderbilt after Appellant was treated for his wound. The interview was conducted in the presence of Trooper Michael Parker. By that time, law enforcement had properly identified Appellant as Walter Lee Hicks, Jr. Sergeant Pollard did not disclose that knowledge to the defendant but instead simply addressed him as Mr. Hicks. Sergeant Pollard asked Appellant for his name and date of birth. Appellant identified himself as Stevie Gregory Hicks and gave the officer an incorrect birth date.[1]

Appellant waived his rights and gave a statement in which he signed the name Steven Gregory Hicks and emphasized that he did not have a weapon and did not fight with the trooper, but merely fled because he got scared. He also stated that the trooper shot him before he put his car in gear and started driving. Appellant also mentioned the patrol car dashboard camera to Sergeant Pollard: ". . . you look at the view dash, view dash will show you verbatim exactly what I'm saying."

Appellant did not testify or present witnesses. After deliberation, the jury returned verdicts of guilt on every charge in the indictment, except that it found Appellant guilty of the lesser included offense of assault rather than the charged offense of aggravated assault.

*Sentencing Hearing*

Prior to the sentencing hearing, a pre-sentencing report was prepared, which included the State's announcement that it intended to rely on three of the defendant's prior convictions as factors to enhance his punishment as a multiple, persistent, or career offender. The report also listed twelve other offenses for which Appellant had been convicted in three different states between the years 1995 and 2012. Appellant entered a statement into the report in which he asked for mercy and characterized himself as a 54 year old disabled veteran who made a poor decision on August 20, 2012, that caused him to suffer another disabling injury. He also asserted that since he was jailed he has been trying to better himself, and he suggested that he would willingly agree to any form of alternative sentencing.

At the start of the hearing, the defense acknowledged that Mr. Hicks could be sentenced as a Range II multiple offender.[2] To support the defendant's classification as a Range II offender, the prosecution submitted evidence of three prior felony convictions – a conviction for unlawful possession of a forged instrument in Madison County, Alabama; a

---

[1]Appellant's conviction for giving a false report was based solely on the information he gave Trooper Judge when he was stopped for speeding, not on the false identification he gave Sergeant Pollard at Vanderbilt.

[2]This was perhaps a strategic decision on the part of the defense, because the record suggests that Mr. Hicks had more than enough felony convictions to be classified as a Range III persistent offender.

conviction for third degree burglary in Madison County Alabama; and a conviction for retail theft in Cook County, Illinois. The State also presented proof that on August 20, 2012, Appellant was on supervised probation from an Alabama conviction for attempted theft.

The trial court imposed sentences for each conviction. Appellant was sentenced to eleven months and twenty-nine days at 75 percent for assault and six months at 75 percent for driving on a revoked license. He was also sentenced to four years for reckless endangerment with a deadly weapon, eight years for evading arrest and creating a risk of death and injury, and five years for giving a false report. The court ordered that those three felony sentences be served consecutively, and that the other sentences be served concurrently, for a total effective sentence of seventeen years at 35 percent.

*ANALYSIS*

Mr. Hicks raises two issues on appeal. He contends (1) that the evidence was insufficient as a matter of law to sustain his convictions for reckless endangerment and false report, and (2) that the sentence was excessive and contrary to the law. He does not raise any issues in regard to his conviction for evading arrest and creating a risk of death and injury.

*I. Sufficiency of the Evidence*

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State." *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn.1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn.1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982).

Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris,* 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *Tuggle,* 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan,* 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

*A. Reckless Endangerment*

The crime of reckless endangerment is committed when a person ". . . recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." T.C.A. § 39-13-103(a). If committed with a deadly weapon, reckless endangerment is a Class E Felony. T.C.A. § 39-13-103(b)(2).

Reckless conduct occurs when the defendant is aware of a substantial and unjustifiable risk of serious injury. "The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint." *State v. Wilson*, 211 S.W.3d 714, 719 (Tenn. 2007).

The proof, viewed in the light most favorable to the State, showed that at about 10:00 p.m. on the night of August 20, 2012, Trooper Judge was attempting to handcuff and arrest Appellant for speeding when Appellant pulled away from his grasp and ran to the front of his rental car. The trooper briefly lost sight of him in the dark shadows. He ordered Appellant to show his hands and get down, and he drew his gun because he was afraid that Appellant might have access to a weapon. As the trooper approached the driver's side of the rental car, Appellant popped up and opened the door. The trooper attempted to restrain Appellant, who was trying to get the car into gear and drive away.

Trooper Judge was afraid that Appellant would drive off and drag him, and he threatened to shoot if Appellant didn't stop. Appellant responded, "shoot me," put the car into gear and moved forward. The trooper testified that the next thing he remembered, he was lying on the highway, shooting at the defendant's car as it sped away. There is no doubt that Trooper Judge could have been seriously injured or killed by being dragged, or by the impact of being thrown to the pavement, or by falling under the rear wheels of Appellant's car, or by being struck by an oncoming car while he lay on the pavement. Appellant's willingness to act in such as way as to place Trooper Judge (and himself) in serious danger to avoid being arrested certainly meets the definition of reckless conduct.

To satisfy the definition of reckless endangerment, the threat of death or serious bodily injury must also be "imminent." The temporal meanings of imminent include impending, threatening, close at hand, and something which is threatening to happen at once. *State v. Payne*, 7 S.W.3d 25, 28 (Tenn. 1999) (citing *Black's Law Dictionary* 650 (6th ed. 1990)). For the purposes of the statute, it also means that the threatened person "must be placed in a reasonable probability of danger as opposed to a mere possibility of danger." *Id.*

The incident in the present case occurred very quickly, possibly within a matter of seconds. And given the volatile combination of a suspect trying to flee in an automobile

while an officer is clinging to him through the window of his car in order to prevent him from doing so, the probability of serious injury or even death to the trooper was high. Thus, the danger created by the defendant's conduct was clearly "imminent" in both senses of the word.

As we have noted, reckless endangerment is a Class E Felony if it is committed with a deadly weapon. T.C.A. § 39-13-103(b)(2). For purposes of the reckless endangerment statute, our courts have found that a car may be considered a deadly weapon, depending on how it is used. *State v. Wilson*, 211 S.W.3d 714, 719 (Tenn. 2007) (citing *State v. Tate*, 912 S.W.2d 785, 787 (Tenn. Crim. App. 1995)). By attempting to drive away in his car while the trooper was holding on to him, the defendant placed the trooper in grave danger. Thus, even though the defendant may not have intentionally tried to injure the trooper, he used his car in a way that made it a deadly weapon.

Appellant's argument on appeal attempts to put the onus onto Trooper Judge. He points out that the trooper willingly ran beside Appellant's car and that he reached in and tried to apprehend Appellant as the car was moving away. Appellant also notes that he was unarmed, while the trooper had drawn his gun and threatened to shoot. If we accept Appellant's argument, an officer of the law would always have to retreat when confronted by danger, or to abandon any attempt to arrest a suspect when the suspect resists in a way that places the officer in danger. Such a result would encourage lawlessness and physical resistance to authority. Viewing the evidence in a light most favorable to the State, we conclude that the evidence produced at trial was sufficient to support a conviction against Appellant for reckless endangerment with a deadly weapon.

*B. False Report*

The proof at trial showed that Appellant gave a false name to Trooper Judge. He argues, however, that he did not commit the crime of false report. Under Tennessee Code Annotated section 39-16-502, it is unlawful to "[m]ake a report or statement in response to a legitimate inquiry by a law enforcement officer concerning a material fact about an offense or incident within the officer's concern, knowing that the report or statement is false and with the intent to obstruct or hinder the officer from preventing the offense or incident from occurring or continuing to occur."[3]

---

[3]As the statutory language indicates, the offense of false report encompasses not only reports volunteered or initiated by individuals to law enforcement authorities, but also false statements made in response to "a legitimate inquiry" by a law enforcement officer. Clearly, a State trooper who stops a motorist for speeding may legitimately ask the motorist to identify himself if the motorist is unable to produce a driver's license.

Appellant argues that he was not trying to hinder the officer from preventing the occurrence of an offense. He notes that the offense of driving on a suspended license had already occurred, thereby implying that a necessary element of the offense of false report was lacking. He also suggests that it would have been more appropriate for him to be charged with criminal impersonation, a Class B misdemeanor. *See* T.C.A. § 39-16-301(a).

The State counters by arguing that Appellant gave the false information in hope that the trooper would simply issue him a speeding ticket and allow him to continue on his way, thereby allowing him to continue to drive with a suspended license, in violation of Tennessee Code Annotated section 55-50-504(a)(1). If the defendant had given the trooper his real name, the trooper would probably have discovered that he was on probation and prevented him from driving any further.

The jury was entitled to accept the State's evidence and conclude that the defendant's response to the trooper's inquiry about his name was knowingly false and was intended to permit him to continue the offense of driving on a suspended license. Thus, the evidence produced at trial was sufficient to support a conviction against Mr. Hicks for false report.

*II. Sentencing Issues*
*A. Length of the Sentences*

The defendant argues that the aggregate sentence of seventeen years imposed on him was excessive and contrary to the general principles of the Tennessee Criminal Sentencing Reform Act of 1989. As he notes, Tennessee Code Annotated section 40-35-102(1) states that "[e]very defendant shall be punished by the imposition of a sentence justly deserved in relation to the seriousness of the offense." Further, Tennessee Code Annotated section 40-35-103(2) states that "[t]he sentence imposed should be no greater than that deserved for the offense committed," while Tennessee Code Annotated section 40-35-103(3) states that "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed."

We review sentencing on appeal under the standard of abuse of discretion. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise,* 380 S.W.3d 682, 707 (Tenn. 2012). In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any

statistical information provided by the administrative office of the courts regarding sentences for similar offenses; (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b),-103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The trial court is still required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See Bise*, 380 S.W.3d at 706, n.41; *State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001). Thus, under *Bise*, a "sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 710.

The sentencing range for reckless endangerment with a deadly weapon, a Class E Felony, is between two and four years when the offense is committed by a multiple offender. T.C.A. § 40-35-112(b)(5). The trial court sentenced the defendant to the maximum of four years. The trial court found as an enhancement factor that "the defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." T.C.A. § 30-35-114(1). To be classified as a multiple offender, a defendant must have been convicted of between two and four felony convictions within the conviction class, a higher class, or within the next two lower felony classes. T.C.A. § 40-35-106(1). The pre-sentencing report in this case indicated that the defendant had been convicted of twelve other offenses in addition to those used to classify him as a Range II offender.

The sentencing range for evading arrest by the use of an automobile and creating a risk of death, a Class D Felony, is between four and eight years when the offense is committed by a Range II multiple offender. T.C.A. § 40-35-112(b)(4). The trial court sentenced the defendant to the maximum of eight years. The court found as enhancement factors that "[t]he offense involved more than one (1) victim," T.C.A. § 40-35-114(3), and "[t]he defendant had no hesitation about committing a crime when the risk to human life was high," T.C.A. § 30-35-114(10).

The defendant in this case drove over 90 miles an hour at night in order to evade arrest on a road that other cars were using. The speed limit on that road was 55 miles per hour. The defendant's driving was erratic, and he was sometimes on the wrong side of the road for a significant amount of time. At one point he almost caused a high-speed head-on collision with another car. Thankfully, the collision was avoided. Further, there was a passenger in his car who was a virtual prisoner because she couldn't get him to stop and couldn't get out.

Thus, the risk to the lives of his passenger and the other drivers on the road was high, thereby justifying an enhanced sentence for the offense.

The sentencing range for false report, a Class D Felony, is between four and eight years when the offense is committed by a Range II multiple offender. T.C.A. § 40-35-112(b)(4). The trial court sentenced the defendant to five years for that offense. The court did not cite any specific enhancement or mitigation factors in regard to that sentence.

When we examine the sentences in this case, we find that in light of the enhancement factors that are amply supported by the record, the trial court did not abuse its discretion in giving Appellant the maximum sentence for his convictions for reckless endangerment with a deadly weapon and for evading arrest by the use of an automobile and creating a risk of death. We also find that in the absence of enhancement factors for the offense of false report, the trial court did not abuse its discretion in giving Appellant a sentence slightly above the minimum within the appropriate range. Appellant is not entitled to relief.

*B. Consecutive Sentencing*

Appellant argues that the trial court erred in ordering that his three felony convictions be served consecutively rather than concurrently. When a defendant is convicted of more than one criminal offense, there is a presumption in favor of concurrent sentencing. *See* T.C.A. § 40-35-115(d). However, the court may order the sentences to run consecutively if it finds by a preponderance of the evidence that one or more of the seven factors listed in Tennessee Code Annotated section 40-35-115(b) exists.

The trial court based its determination on two of the statutory factors: "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high," T.C.A. § 40-35-115(b)(4), and "[t]he defendant was released on probation at the time of the offense," T.C.A. § 40-35-115(b)(6). We addressed Appellant's lack of regard for human life in the previous section of this opinion. Further, Appellant does not deny that he was on probation on August 20, 2012. In fact, the proof shows that he was placed on probation the day before.

The trial court stated that its sentencing decision was based on its finding that "the length of these offenses are justly deserved in relationship to the seriousness of these offenses, and that the extended sentences of these consecutive sentences is necessary to protect society. And I also find that it's reasonably related to the severity of the offenses that's required under the dangerous offender category." *See State v. Wilkerson*, 905 S.W.2d 933, 935 (Tenn. 1995).

After a period of uncertainty, our Supreme Court recently ruled that the same standard

-11-

of review that applies to a trial court's decisions about the length of sentences under *Bise*, also applies to its decisions regarding concurrent or consecutive sentences: "We hold that, when a trial court places findings on the record to support its sentencing decision, the applicable standard of appellate review for a challenge to the imposition of consecutive sentences is abuse of discretion with a presumption of reasonableness." *State v. Pollard*, — S.W.3d —, 2013 WL 6732667 at *7 (Tenn. 2013).

The record in this case included proof of two separate statutory factors, either of which could have been used by itself to justify consecutive sentencing. We therefore determine that the trial court did not abuse its discretion. Appellant is not entitled to relief.

### III. Clerical Errors

The State notes two clerical errors on appeal. Appellant was convicted of both misdemeanor assault and reckless endangerment. Since both convictions arose out of the same conduct against the same victim (Trooper Judge), the State asserts that the two convictions should be merged, in order to avoid a violation of double jeopardy principles. *See State v. Carl G. Boone*, M2009-00188-CCA-R3-CD, 2010 WL 432411 at *5 (Tenn. Crim. App. at Nashville, Feb. 8, 2010) (citing *State v. Denton*, 938 S.W.2d 373, 378 (Tenn.1996); *State v. Adams*, 973 S.W.2d 224, 229 (Tenn. Crim. App. 1997)). We agree.

The State also notes that the trial court incorrectly checked boxes for both 75 percent release eligibility and 35 percent release eligibility on the defendant's conviction for assault. While the court can correct clerical errors at any time, it appears to us that the merger of the misdemeanor assault into the felony reckless endangerment conviction will render the question of release eligibility for the assault conviction moot.

### CONCLUSION

After a thorough review of the record, we affirm Appellant's convictions for driving on a revoked license, felony reckless endangerment, evading arrest and false report, as well as the sentences imposed for those convictions. We remand this case to the trial court for the entry of a corrected judgment to reflect that Appellant's conviction for misdemeanor assault should be merged with his conviction for felony reckless endangerment.

_____
JERRY L. SMITH, JUDGE