IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 7, 2017

**STATE OF TENNESSEE v. MARIO BOWLES**

**Appeal from the Criminal Court for Shelby County**
No. 14-00579      J. Robert Carter, Jr., Judge

_____

**No. W2016-00496-CCA-R3-CD**

_____

Defendant, Mario Bowles, was convicted by a Shelby County jury of two counts of aggravated rape and one count of aggravated kidnapping. The trial court sentenced Defendant to twenty-three years at one-hundred percent for each count of aggravated rape, which the trial court merged, and twenty-three years at one-hundred percent for aggravated kidnapping. The sentences were ordered to be served concurrently with one another and consecutively with an unrelated case. On appeal, Defendant argues that the evidence was insufficient to support his convictions for aggravated rape and that the trial court erred by failing to instruct the jury on the lesser-included offense of attempted aggravated rape. After a thorough review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, and J. ROSS DYER, JJ., joined.

Stephen C. Bush, District Public Defender; Harry E. Sayle III, and Charles Walker, Assistant Public Defenders, Memphis, Tennessee, for the appellant, Mario Bowles.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Dru Carpenter, and Cavet Ostner, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

*Background*

In October 2013, the victim was working as a case manager at Southeast Mental Health Center, and Defendant was one of her clients. She had been his case worker since August or September 2013, and she had met with him three times. On October 2, 2013,

the victim was scheduled to meet with Defendant at his residence. The victim called Defendant that day and asked if she could meet with him earlier than scheduled, and Defendant agreed. She arrived fifteen minutes later at Defendant's home on Trout Valley Cove. The victim knocked on the door, and Defendant let her in. He immediately closed and locked the door behind her. Although Defendant lived with his mother, she was not home at the time. The victim testified: "And then from behind he put his hand on my mouth and a knife to my neck and we kind of hit the floor." Defendant told the victim to be quiet and asked where her phone was located, and she motioned toward it. Defendant then stood the victim up from the floor and had her walk toward a bedroom. He was still behind her with his hand over her mouth and the knife to her neck.

The victim and Defendant walked into the bedroom, and Defendant again instructed her to not say anything. He took his hand away from her mouth and told her to remove her pants and underwear. The victim tried to talk to Defendant but he told her to be quiet. Defendant instructed the victim to get on the bed, and he got on top of her with the knife to her neck. She noticed a second longer knife on the bed near their legs. The victim testified that Defendant thought she was wearing a wire, so he told her to repeat the date and say that she would come back later to see him. Defendant then told the victim that he was going to rub his penis on her vagina but that "he wasn't going to put it in." The victim testified that Defendant pulled his pants down, and she said:

> He was just rubbing his penis on my vagina just kind of up and down. And then he - - I was still - - he just kept saying be quiet. And anytime I tried to talk he would just take the knife and kind of put it to my throat and tell me to be quiet. And then he spit on his hand and he rubbed it on my vagina and he was rubbing his penis on it. And so I was saying, you know, that I just want to help him. Why do he want to hurt me and stuff. And so he was just - - he was like be quiet. He was looking out the window. Just kind of paranoid that somebody was coming. And so - - and so he said that he was going to put it in for a little bit. And so I started to cry. And so he just said - - but I couldn't cry. I just ma[d]e a noise and he was just like be quiet. And so he - -

> \* \* \*

> He put his penis in my vagina and he was just moving kind of like up and down.

At some point, Defendant put the knife down to spit on his hand, and the victim grabbed the knife and attempted to stab Defendant in the back. The blade of the knife bent, and the victim and Defendant got into a scuffle. The blade of the knife ended up in the victim's hand and cut her hand and her thigh. The victim testified that Defendant took the knife and tossed it behind the headboard of the bed. She said that Defendant

- 2 -

seemed stunned and said that she had tried to kill him. Defendant eventually said that he had "messed up" and was going to let the victim go. Defendant also told the victim that he had been drinking beer and using cocaine. At that point, Defendant got up and put his pants back on. The victim was not certain if Defendant ejaculated while he was raping her but he told her that he did not and that he did not have AIDS. Defendant allowed the victim to put her underwear and pants back on, and they walked out of the bedroom. Defendant then told the victim to go into the bathroom and clean herself. The victim took a white towel from the sink and wiped between her legs. At that point, Defendant was still apologizing to her, and he made her pray with him. Defendant did not feel that the victim cleaned herself enough so he made her wipe again with soap.

Defendant and the victim walked into the living room, and the victim sat on the couch. At that point, the victim did not feel that she could leave. Defendant told her to remove a bottle of pills wedged between the cushions of the couch. He took some of the pills with water and said that he was going to commit suicide. The victim told him that she did not want him to die, and he spit out the pills. Defendant had them pray again, and he had the victim swear on the Bible that she would not call police. The victim gathered her cell phone and calendar from the floor, and her phone rang twice. The second call was from Southeast Mental Health Center. The victim told Defendant that it was her employer calling and that they would come looking for her because she had been gone too long. Defendant unlocked the door and looked outside. The victim still had the Bible in her hand, and she told Defendant to allow her to keep the Bible as assurance that she would not call police.

Defendant allowed the victim to leave, and she got in the car and called police as she was leaving. The victim told them to meet her back at work. The victim called her aunt, and the victim also called her (the victim's) best friend. The victim arrived back at Southeast Mental Health Center and was taken into a conference room by her supervisor, Marilyn Smith. Police arrived, and the victim told them what happened. She was taken by patrol car to the Rape Crisis Center for an examination. The victim went to the police department the following day and gave a statement to Sergeant Blue. She was also shown a photographic lineup, and she identified Defendant as the person who raped her. The victim testified that several months later, Latoya Lewis was in the victim's car and noticed the Bible that the victim had taken from Defendant's house. The victim had not disposed of it because it was the Bible. The victim told Ms. Lewis where the Bible came from, and Ms. Lewis threw it away.

Dr. Glenda Moses examined the victim at the Rape Crisis Center on October 2, 2013. She said that the victim told her that she made a visit to a client. When the victim got inside the house, the client locked the door and put a knife to her neck. He then raped her. Dr. Moses testified that the victim had injuries to her left neck, right thigh area, and her right hand. There were multiple cuts on the palm of her hand. Dr. Moses took pictures of the victim and collected forensic evidence. She noted that the victim was

"cooperative but tearful during the exam." Dr. Moses turned the forensic evidence over to someone with the Memphis Police Department.

Officer Steven Logan of the Memphis Police Department testified that he was dispatched to Defendant's residence on October 2, 2013, to look for Defendant. Defendant's mother eventually arrived and gave officers consent to search the house. A knife was found on the bed in Defendant's bedroom, and some white towels were found. Officer Logan testified that he did not personally look behind Defendant's bed.

Officer James Dobbins of the Shelby County Sheriff's Office, Fugitive Unit, testified that in late August 2014, the State of New York contacted them to verify an outstanding warrant against Defendant from Shelby County. An extradition hearing was held in New York, and Defendant signed a waiver of extradition. The extradition paperwork listed Defendant's name as "Sirius Mur AKA Mario Bowles." Defendant signed his name as "Sirius Mur." He was returned to Shelby County on September 9, 2014.

The victim's aunt verified that the victim called her sometime after noon on October 2, 2013. She said that the victim was hysterical and crying, and the victim said, "He raped me." The aunt testified that the victim had nightmares after the rape, and she would not eat. Marilyn Smith, the victim's supervisor, also testified that the victim called her on the afternoon of October 2, 2013. She said that the victim sounded distraught and said that she had a knife held to her throat, and she had been raped. Ms. Smith told the victim to go to police but the victim pulled up in the parking lot of Southeast Mental Health Center a few minutes later. Ms. Smith took the victim to a conference room. She noted that the victim was shaking uncontrollably and appeared to be going into shock. There were cuts on the victim's hands, and she was stammering. Police later arrived, and the victim was taken to the Rape Crisis Center. Ms. Smith testified that the victim returned to work several days later. She attempted to do field work but was too afraid. The victim took another job four to six weeks later.

Latoya Lewis worked with the victim at Southeast Mental Health Center. She saw the victim on October 2, 2013, when Ms. Smith took her to the conference room. Concerning the victim's appearance, Ms. Lewis testified: "Her hair was a little all over. Her makeup had been running. Nails seemed to be broken. And her clothes wasn't together like they usually are." She said that the victim was quiet, and it appeared that she had been crying. Ms. Lewis testified that she was in the victim's car sometime later and noticed a Bible in the back seat, which was unusual because there was usually nothing in the backseat area. When she realized who the Bible belonged to, Ms. Lewis threw it in the trash.

*Analysis*

**Sufficiency of the Evidence**

In his "Conclusion" in his brief, Defendant requests that this court reverse his convictions for aggravated rape and especially aggravated kidnapping. However, Defendant's sufficiency argument only challenges the sufficiency of the evidence for his aggravated rape convictions. The first count of aggravated rape alleges that the rape was accomplished through force or coercion while Defendant was armed with a knife. The second count of aggravated rape alleges that the victim suffered bodily injury. Therefore, we will only address those particular convictions.

When a defendant challenges the sufficiency of the evidence, this court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore on appeal, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Our criminal code provides that aggravated rape "is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim accompanied by . . . [f]orce or coercion . . . and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon . . . [or][t]he defendant causes bodily injury to the victim[.]" Tenn. Code Ann. § 39-13-502. Sexual penetration is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening of the victim's, the defendant's, or any other

person's body, but emission of semen is not required[.]"  *Id.* § 39-13-501(7) (2006). Coercion "means a threat, however communicated, to[ ] . . . commit any offense[,]" and force "means compulsion by the use of physical power or violence."  *Id.* § 39-11-106(a)(3)(A), (a)(12) (2006).  Bodily injury "includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty[.]"  *Id.* § 39-11-106(a)(2).

In this case, the proof shows that Defendant held the victim at knifepoint and ordered her to remove her pants and underwear.  Defendant instructed the victim to get on the bed, and he got on top of her still holding the knife to her neck.  The victim testified that Defendant pulled down his pants and rubbed his penis on her vagina.  He spit on his hand and rubbed it on her vagina as he rubbed his penis on it.  Defendant then told the victim that he was "going to put it in for a little bit."  The victim specifically testified:  "[Defendant] put his penis in my vagina and he was just moving kind of like up and down."  At some point, the victim struggled with Defendant over the knife resulting in cuts to the victim's hand and thigh.  Defendant instructed the victim to clean herself twice with a white towel after the rape.  He also told the victim that he did not ejaculate and did not have AIDS.

Dr. Glenda Moses examined the victim at the Rape Crisis Center.  She verified that the victim had injuries to her left neck, right thigh area, and her right hand.  The victim told Dr. Moses, her aunt, and Marilyn Smith that she had been raped.  She also spoke with Sergeant Blue at the Memphis Police Department and identified Defendant from a photographic lineup as the person who raped her.  Police searched Defendant's house and recovered a knife from the bed and some white towels as described by the victim.  Latoya Lewis saw the victim when she returned to work on October 2, 2013, immediately after the rape occurred.  Concerning the victim's appearance, Ms. Lewis testified: "Her hair was a little all over.  Her makeup had been running.  Nails seemed to be broken.  And her clothes wasn't together like they usually are."  She said that the victim was quiet, and it appeared that she had been crying.  Ms. Smith noted that when the victim returned to Southeast Mental Health Center after the rape, the victim was shaking uncontrollably and appeared to be going into shock.  There were cuts on the victim's hands, and she was stammering. The victim testified that Defendant allowed her to keep the Bible when she left his house as assurance that she would not call police.  Ms. Lewis verified that she later saw the Bible in the victim's car and threw the Bible away.

Defendant contends that the victim's testimony was not corroborated nor was there any forensic evidence showing that penetration occurred.  However, as pointed out by the State, there is no requirement under our law that a rape victim's testimony be corroborated.  *State v. Willis*, 735 S.W.2d 818 (Tenn. Crim. App. 1987).  However, in this case, we have noted corroborative evidence in our summary of the proof which tends to support and give weight to the victim's testimony.  *See State v. Holston*, No. 02C01-9210-CR-00247, 1993 WL 350162, at *2 (Tenn. Crim. App. Sept. 15, 1993).  Moreover,

there is no statutory requirement that penetration must be proven by forensic evidence. *See* T.C.A. § 39-13-501(7). The jury, as was its prerogative, obviously accredited the testimony of the State's witnesses. Therefore, we conclude that the evidence is sufficient to support Defendant's convictions for aggravated rape.

### Jury Instruction on Attempted Aggravated Rape

Defendant argues that the trial court erred by failing to instruct the jury on attempted aggravated rape as a lesser-included offense of each count of aggravated rape because it was fairly raised by the proof. He asserts that he was therefore "denied a complete and correct jury instruction."

In criminal cases, a defendant has the right to a correct and complete charge of the law. *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000). The material elements of the charged offense should be described and defined in connection with that offense. *State v. Ducker*, 27 S.W.3d 889, 899 (Tenn. 2000); *State v. Cravens*, 764 S.W.2d 754, 756 (Tenn. 1989). A criminal defendant denied a correct and complete charge of the law is deprived of the constitutional right to a jury trial, which subjects the erroneous jury instruction to a constitutional harmless error analysis. *Garrison*, 40 S.W.3d at 433-34. Because the right is constitutional in nature, the State bears the burden of showing the deprivation of this right is harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967); *Momon v. State*, 18 S.W.3d 152, 167 (Tenn. 1999). Moreover, an error affecting a constitutional right is presumed reversible, and such error will result in reversal of the conviction unless the State shows beyond a reasonable doubt that the error did not prejudice the outcome of the trial. *State v. Ely*, 48 S.W.3d 710, 725 (Tenn. 2001); *State v. Harris*, 989 S.W.2d 307, 315 (Tenn. 1999).

Determining whether the trial court should have instructed the jury on a lesser included offense is a mixed question of law and fact, which we review de novo with no presumption of correctness. *State v. Banks*, 271 S.W.3d 90, 124 (Tenn. 2008) (citing *State v. Hatfield*, 130 S.W.3d 40, 41 (Tenn. 2004); *Carpenter v. State*, 126 S.W.3d 879, 892 (Tenn. 2004)). When addressing issues related to failure to charge lesser included offenses, appellate courts consider three questions: "(1) whether the offense is a lesser[-]included offense; (2) whether the evidence supports a lesser[-]included offense instruction; and (3) whether the failure to give the instruction is harmless error." *Id.* (citing *State v. Allen*, 69 S.W.3d 181, 187 (Tenn. 2002)).

Pursuant to Tennessee Code Annotated section 40-18-110(f), an offense is a lesser included offense if:

> (1) All of its statutory elements are included within the statutory elements of the offense charged;

(2) The offense is facilitation of the offense charged or of an offense that otherwise meets the definition of lesser included offense in subdivision (f)(1);

(3) The offense is an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in subdivision (f)(1); or

(4) The offense is solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser included offense in subdivision (f)(1).

Tenn. Code Ann. § 40-18-110(f) (2012).

If "a lesser offense is included in the charged offense, the question remains whether the evidence justifies a jury instruction on such lesser offense." *State v. Burns*, 6 S.W.3d 453, 467 (Tenn. 1999). Tennessee Code Annotated section 40-18-110(a) (2012) provides:

When requested by a party in writing prior to the trial judge's instructions to the jury in a criminal case, the trial judge shall instruct the jury as to the law of each offense specifically identified in the request that is a lesser included offense of the offense charged in the indictment or presentment. However, the trial judge shall not instruct the jury as to any lesser included offense unless the judge determines that the record contains any evidence which reasonable minds could accept as to the lesser included offense. In making this determination, the trial judge shall view the evidence liberally in the light most favorable to the existence of the lesser included offense without making any judgment on the credibility of evidence. The trial judge shall also determine whether the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser included offense.

Generally, evidence that is sufficient to support an instruction on the greater offense will also support an instruction on the lesser included offense under Tennessee Code Annotated section 40-18-110(f)(1). *Banks*, 271 S.W.3d at 125. However, instructions on the lesser included offenses of attempt, solicitation, or facilitation are unnecessary "where the evidence clearly establishes completion of the criminal act or simply does not involve proof of solicitation or facilitation." *Id.* (citing *State v. Wilson*, 211 S.W.3d 714, 721 n.2 (Tenn. 2007); *State v. Robinson*, 146 S.W.3d 469, 487 n.7 (Tenn. 2004)).

In this case, the trial court properly charged the jury on the lesser-included offenses of rape, aggravated sexual battery, and sexual battery. *State v. Bowles*, 52 S.W.3d 69, 76-77 (Tenn. 2001). The trial court refused Defendant's request to charge the jury on attempted aggravated rape. Concerning this issue, the trial court said:

Criminal attempt aggravated rape and criminal attempt aggravated kidnapping are lesser-included offenses, but in this case I'm not charging them because they simply were not raised by the proof. The proof was very, very clear from the witness that the penetration was accomplished and also that the imprisonment or the inhabitation of movement was accomplished if a jury chooses to accredit the testimony. But it was just simply a situation - - it's not a question of it almost happened or, you know, didn't quite happen. I find that the proof was very clear that it was a completed act if the jury chooses to accredit that. So for that reason, I'm not charging criminal attempt.

Also just as an aside, a criminal attempt aggravated rape would be a (B) Felony and the rape that's being charged and the sexual battery that are being charged there are, you know, lesser includeds that are going to be charged that not only encompass that range but go down further than that. So - - but the real reason I'm not charging it is that in my opinion after hearing the proof, it's simply not supported in any way by the proof.

Under *Burns*, "an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense" is a lesser included offense of the charged offense. *Burns*, 6 S.W.3d at 466-67. Therefore, attempted aggravated rape is a lesser included offense of aggravated rape. Having determined that attempted aggravated rape is a lesser included offense of aggravated rape, the next step is to determine if the evidence in the record supports charging the offense. "An attempt instruction is not required if the only proof presented was proof of the completed crime as opposed to an attempt." *State v. Biggs*, 218 S.W.3d 643, 658 (Tenn. Crim. App. 2006); *See State v. Marcum*, 109 S.W.3d 300, 304 (Tenn. 2003); *see also State v. Stokely J.U. Way*, No. E2002-00251-CCA-R3-CD, 2004 WL 234741, at *15 (Tenn. Crim. App. Feb. 9, 2004) (an attempted rape instruction was not necessary since the only evidence presented was the victim's testimony that the defendant penetrated her). In this case, an attempted aggravated rape instruction was not required because the only evidence presented at trial was proof of a completed crime. Defendant argues only that some proof suggested that the element of penetration never reached completion. He does not argue that there is evidence showing only an attempt at any other essential elements: force or coercion, and while Defendant is armed with a knife as to count one, and, bodily injury to the victim as to count two. Also, Defendant includes in his argument that attempt to commit each lesser-included offense of aggravated rape should have been charged to the jury. However, he makes no further argument than what he made which is specific to aggravated rape. The trial court charged as lesser-included offenses of aggravated rape the following: rape, aggravated sexual battery, and sexual battery. As to attempted rape, the same analysis that we used to conclude that the trial court did not err by declining to

- 9 -

charge attempted aggravated rape applies.  Penetration is not an essential element of either aggravated sexual battery or sexual battery.  As noted above, the *only* essential element of any offense where Defendant argues that there was some evidence of showing only an attempt is penetration.  Defendant has failed to demonstrate any error by the trial court in declining to charge attempt of any of the lesser-included offenses.  Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review of the record and the applicable law, we conclude that Defendant's convictions were sufficiently supported by the evidence and that the trial court properly instructed the jury on the lesser-included offenses of aggravated rape. Therefore, we affirm the judgments of the trial court.


_____
THOMAS T. WOODALL, PRESIDING JUDGE