IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 2, 2019

## STATE OF TENNESSEE v. SANGRIA VENTURIA BAKER, JR.

**Appeal from the Circuit Court for Madison County**
**No. 17-413    Donald H. Allen, Judge**

_____

### No. W2018-00732-CCA-R3-CD

_____

Defendant, Sangria Venturia Baker, Jr., was convicted of two counts of aggravated assault, one count of felony evading arrest, one count of possession of an imitation controlled substance with intent to sell or deliver, one merged count of possession of marijuana with intent to sell or deliver, one count of possession of drug paraphernalia, and one count of resisting arrest. On appeal, Defendant challenges the sufficiency of the evidence supporting his convictions and argues that the trial court erred by denying his motion in limine to exclude mention of the subject matter of the warrant the officers were serving at the time of this incident and by denying his request for a jury instruction on misdemeanor reckless endangerment as a lesser-included offense of aggravated assault. Because the evidence was insufficient to establish that the white powder substance found in the back of Defendant's vehicle met the statutory definition of an imitation controlled substance, we reverse and vacate Defendant's conviction for possession of an imitation controlled substance with intent to sell or deliver. In all other respects, we affirm the judgments of the trial court and remand the case for the imposition of a sentence in Count 6, which merged into Count 7.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part and Reversed in Part, Case Remanded

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ALAN E. GLENN, J., joined.

Terita Hewlett, Memphis, Tennessee, for the appellant, Sangria Venturia Baker, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Jody Pickens, District Attorney General; and Aaron J. Chaplin and Bradley F. Champine, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

On March 29, 2016, officers with the Jackson Police Department and the United States Marshal Service went to serve an outstanding arrest warrant for attempted murder on a juvenile named Jarrod[1] James after receiving a tip that he was located in the area of Stanfill Lane. Deputy U.S. Marshal Shane Brown, Investigator Terrance Smith, Investigator Mark Headen, and Special Agent Joe Frye set up surveillance in an unmarked black Ford Explorer. Deputy Brown identified James exiting the residence and getting into the back seat of a black Lexus SUV parked in the street. Another passenger, later identified as John Martin, was also getting into the front seat of the SUV. Deputy Brown then notified Sergeant Richard Newbill and Special Agent Emily Sikes, who were waiting in the area in a separate vehicle. Deputy Brown used his vehicle to block the front of the SUV, and Sergeant Newbill used his vehicle to block the rear of the SUV. Both vehicles had their blue lights on. The four officers exited Deputy Brown's vehicle with their guns drawn, each wearing raid vests clearly marked as either "Police" or "US Marshal." The officers identified themselves and gave commands for the occupants of the SUV to place their hands where they could be seen, for the driver to turn off the car, and that James was under arrest. The driver of the SUV was identified as Defendant.

Defendant looked back over his shoulder at Sergeant Newbill's vehicle. Agent Sikes grabbed Sergeant Newbill and told him not to get out of the vehicle. Defendant then put the SUV into reverse and rammed the front of Sergeant Newbill's vehicle, causing it to spin over 90 degrees. The front passenger door of the SUV, which had not been closed all the way, folded back against the front fender as it struck Sergeant Newbill's vehicle. Some of the officers ran after the vehicle on foot, yelling for Defendant to stop. Defendant drove the SUV in reverse at a high rate of speed down Stanfill Lane before putting it in drive and turning onto Summar Avenue. Sergeant Newbill activated his siren and gave chase. According to Sergeant Newbill, there was a lot of traffic because it was around 3:30 in the afternoon, around "the time when kids get out of school"; however, Defendant did not slow down. Defendant eventually turned onto West Forest Avenue and drove past the hospital, which was congested due to construction. At the intersection of Forest Avenue and Campbell Street, Defendant almost ran into a citizen driving a silver sedan. Defendant then turned into an apartment complex off of Forest Avenue. He and the other passengers bailed out of the SUV and fled on foot; one of the passengers was armed with a handgun. The SUV rolled backwards and struck Sergeant Newbill's vehicle a second time.

---

[1] This individual's name is spelled "Jarrod" in the trial transcript and "Jerrod" in various documents in the technical record.

Investigators Joseph Williams and Rodney Savage responded to the radio call about the pursuit of suspects. Both investigators, as well as other officers, responded to a residence on Walnut Street, just behind the apartment complex, where two of the suspects were hiding under vehicles inside of a garage. Orders were given for the suspects to come out and show their hands. Officers had to drag the suspects, Defendant and Martin, out from under the vehicles. Defendant had one arm underneath his body and the other stretched out. The officers ordered Defendant to put his hands behind his back. Defendant struggled before his hands were eventually put behind his back, and Investigator Williams was able to put handcuffs on him. James was subsequently apprehended at a different location.

Investigator Savage then went to the apartment complex to assist Investigator Kelly Schrotberger in the search of the abandoned SUV, which was registered to Defendant's mother. A bag of approximately 375.6 grams of marijuana, enough to be broken into smaller quantities for resale, was found in plain view on the front passenger side floorboard of the SUV. A plastic bag containing approximately 24.4 grams of a white powder substance was found inside a box of sandwich bags in the rear cargo area of the SUV. The powder appeared to be two eight balls of cocaine, which would have a street value of approximately $500. A digital scale was found in the pocket of the driver's side door. Some mail with Defendant's name and a wallet containing Defendant's driver's license were also found inside of the SUV. Approximately $500 in cash was seized from Defendant's property at the jail.

The following day, Investigator Williams and Investigator Savage interviewed Defendant. Defendant signed a waiver of his rights. After speaking to Defendant, Investigator Williams wrote out a statement and read it back to Defendant to make sure it was correct. After Investigator Williams reviewed the statement and allowed Defendant to make any changes, Defendant signed the statement. The statement read as follows:

> I, Sangria Baker, was driving in the area of Stanfill Drive when the police jumped out on me. I was scared, so I ran and drove to the area of West Forest Avenue. I ran from the vehicle. I had a digital scale on the driver's side of the vehicle and a white powder substance that was in the back. The powder substance is fake and is not drugs. I did not have anything else illegal inside the vehicle.

The marijuana and the white powder were submitted to the Tennessee Bureau of Investigation (TBI) for testing by then-Special Agent Peter Hall. The white powder weighed 21.96 grams without packaging and was determined not to contain any controlled substances. The testing indicated that the powder may have been benzocaine, but this could not be confirmed because the TBI did not have a known standard with

which to compare it. The green leafy substance was confirmed to be marijuana and weighed 346.32 grams without packaging.

The jury convicted Defendant as charged for aggravated assault with a deadly weapon against Sergeant Newbill in Count 1 and against Agent Sikes in Count 2, *see* T.C.A. § 39-13-102; felony evading arrest creating a risk of death or injury to others in Count 3, *see* T.C.A. § 39-16-603; manufacturing, selling, delivering, or possessing with the intent to sell, deliver, or manufacture an imitation controlled substance in Count 4, *see* T.C.A. § 39-17-453; possession of drug paraphernalia in Count 5, *see* T.C.A. § 39-17-425; possession of more than one-half ounce of marijuana with intent to sell in Count 6 and with intent to deliver in Count 7, *see* T.C.A.§ 39-17-417; and resisting arrest in Count 8, *see* T.C.A. § 39-16-602. After a sentencing hearing, the trial court merged the marijuana offenses into a single conviction[2] and imposed a total effective sentence of 10 years, to be served consecutively to Defendant's sentence in another case. Defendant filed a motion for new trial, which was denied by the trial court on March 27, 2018. Defendant filed a timely notice of appeal.

*Analysis*

On appeal, Defendant argues that the evidence is insufficient to support his convictions.[3] Defendant also argues that the trial court erred by denying his motion in limine to exclude evidence regarding the subject matter of the warrant that the officers were attempting to serve at the time of the incident as well as by refusing to instruct the jury on misdemeanor reckless endangerment as a lesser-included offense of aggravated assault. We shall address each issue in turn.

*I. Sufficiency of the Evidence*

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence

---

[2] The judgment form for Count 6, possession of marijuana with intent to sell, states that it merges into Count 7, possession of marijuana with intent to deliver, but does not contain a sentence. Pursuant to *State v. Berry*, 503 S.W.3d 360, 365 (Tenn. 2015), the trial court should enter an amended judgment form in Count 6 imposing a sentence for that conviction. Whether this requires a new sentencing hearing is within the sole discretion of the trial court.

[3] Defendant does not challenge the sufficiency of the evidence supporting his conviction for possession of drug paraphernalia.

introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). "'A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory.'" *Id.* (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). Therefore, the prosecution is entitled to the "'strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).[4]

### A.  Aggravated Assault

As charged in this case, a person commits aggravated assault by intentionally or knowingly causing another to reasonably fear imminent bodily injury by the use or display of a deadly weapon. T.C.A. §§ 39-13-101(a)(2), -102(a)(1)(A)(iii). A person acts intentionally "when it is the person's conscious objective or desire to engage in the conduct or cause the result." T.C.A. § 39-11-302(a). A person acts knowingly "when the person is aware of the nature of the conduct or that the circumstances [surrounding the conduct] exist" or "when the person is aware that the conduct is reasonably certain to cause the result." *Id.* at (b). A deadly weapon is "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." T.C.A. § 39-11-106(a)(5)(B). An automobile may be considered a deadly weapon. *State v. Wilson*, 211 S.W.3d 714, 719 (Tenn. 2007).

Defendant argues that he did not intentionally or knowingly commit an assault because "his actions were done out of fear in a split second subconscious decision involving flight" after he was "swarmed by two unmarked black SUV's [sic] from which

_____

[4] Defendant cites *State v. Crawford*, 470 S.W.2d 610, 612 (Tenn. 1971), for the proposition that circumstantial evidence must weave "a web of guilt" around a defendant and "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant" in order to sustain a conviction. However, the Tennessee Supreme Court specifically overruled that standard in *Dorantes*, wherein it held that circumstantial evidence "is intrinsically no different" from direct evidence. 331 S.W.3d at 380; *see also State v. Smith*, 436 S.W.3d 751, 764 (Tenn. 2014) (reiterating that "[c]ircumstantial evidence is sufficient to sustain a defendant's conviction even if the evidence does not 'remove every reasonable hypothesis except that of guilt'").

a number of armed men exited with guns drawn." However, a defendant's fear does not negate his capacity to form the requisite mens rea. *See State v. Hatcher*, 310 S.W.3d 788, 807 (Tenn. 2010). In the light most favorable to the State, the evidence at trial established that Defendant intentionally and knowingly used his vehicle as a deadly weapon, causing both Sergeant Newbill and Agent Sikes to reasonably fear imminent bodily injury. Both officers saw Defendant look back over his shoulder directly at them, and Agent Sikes grabbed Sergeant Newbill and told him not to get out of the vehicle because she had a "gut feeling" that Defendant was going to make an attempt to flee. Defendant then placed the SUV into reverse and rammed into Sergeant Newbill's vehicle with enough force to cause Sergeant Newbill's vehicle to spin over 90 degrees and the front passenger door of the SUV to fold back against the front fender. Both officers described the impact of the crash and their fear that they could have been injured if they had gotten out of their vehicle. The evidence is more than sufficient to sustain both of Defendant's convictions for aggravated assault.

## B. Felony Evading Arrest

Under Tennessee Code Annotated section 39-16-603(b)(1), "[i]t is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." The offense is elevated to a Class D felony "[i]f the flight or attempt to elude creates a risk of death or injury to innocent bystanders, pursuing law enforcement officers, or other third parties[.]" T.C.A. § 39-16-603(b)(3)(B).

In the light most favorable to the State, the evidence shows that two police vehicles, with their blue lights activated, boxed in Defendant's SUV to prevent it from leaving the scene. Several officers, wearing raid vests clearly marked as "Police" or "U.S. Marshal," gave orders for the occupants of the vehicle to place their hands where they could be seen and that James was under arrest. Defendant placed the SUV into reverse, rammed into Sergeant Newbill's vehicle, and sped off down several heavily-trafficked streets. Defendant argues that there was "no evidence of any innocent bystanders being in danger of death or injury" except for "one sentence" during "Sergeant Newbill's testimony that there was 'almost' an accident." However, not only is Sergeant Newbill's testimony, which was corroborated by Agent Sikes, that Defendant nearly collided with a silver car in an intersection sufficient to show a risk to innocent bystanders, there was also testimony that the high speed chase occurred at a busy time of day when school lets out and passed through an area congested by construction on the nearby hospital. Moreover, Defendant's flight also created a risk to the pursuing law enforcement officers when he rammed into Sergeant Newbill's vehicle to make his initial escape and when the SUV struck Sergeant Newbill's vehicle a second time after

Defendant and his compatriots bailed out and fled on foot. The evidence is more than sufficient to sustain Defendant's conviction for felony evading arrest.

### C. Possession of an Imitation Controlled Substance

Defendant was charged with a violation of Tennessee Code Annotated section 39-17-453(a), which makes it "an offense to knowingly manufacture, deliver, sell, or possess with the intent to sell, deliver or manufacture an imitation controlled substance."[5] The statute provides two definitions of an imitation controlled substance. One is "a pill, capsule, tablet, or substance in any form whatsoever" that (1) is not a controlled substance; (2) is subject to abuse; (3) "[p]urports, by express or implied representations, to act like a controlled substance that is a stimulant or depressant of the central nervous system"; and (4) is not commonly used for any purpose other than as a stimulant or depressant. T.C.A. § 39-17-453(d)(1)(A). The other is a substance that has a chemical structure that "is a derivative or analogue of the chemical structure of a controlled substance" and is not commonly used for any purpose other than as a stimulant or depressant. T.C.A. § 39-17-453(d)(1)(B).

In this case, the white powder found in the back of Defendant's SUV was determined not to be cocaine, but the TBI could not conclusively determine what it actually was. Other than Defendant's statement that the substance was "fake," there was no evidence, even in the light most favorable to the State, that the substance fit either definition of an imitation controlled substance provided in the statute with which Defendant was charged. There was no evidence that the substance, in that particular formulation, was not commonly used for any purpose other than as a stimulant or depressant of the central nervous system. *See id*. at (A)(iv), (B)(ii). There was no evidence that the chemical structure of the substance was a derivative or analogue of a controlled substance. *See id*. at (B)(i). There was no evidence that the substance was subject to abuse or that anyone made any express or implied representations that the substance acted like a controlled substance. *See id*. at (A)(ii), (iii). Evidence that the white powder looked like cocaine but was not in fact cocaine is insufficient to meet the statutory definition of an imitation controlled substance under Tennessee Code Annotated

---

[5] Both Defendant and the State erroneously cite Tennessee Code Annotated section 39-17-423(a), which makes it an offense to sell, deliver, or distribute a counterfeit controlled substance, which is any substance that "is represented to be a controlled substance and which is substantially similar in color, shape, size, and markings or lack thereof, to a . . . controlled substance[.]" However, not only was Defendant not charged under that statute, that statute requires both an actual sale or delivery of the substance as well as some sort of representation that the substance is a controlled substance, neither of which occurred in this case. *See State v. Roshad Romanic Siler*, No. E2005-01201-CCA-R3-CD, 2007 WL 10450, at *3 (Tenn. Crim. App. Jan. 3, 2007) (citing *State v. Jeffrey Antwon Burns*, No. M1999-01830-CCA-R3-CD, 2000 WL 1520261, at *3 (Tenn. Crim. App. Oct. 13, 2000), *perm. app. denied* (Tenn. Apr. 23, 2001)), *no perm. app. filed*.

section 39-17-453. Thus, Defendant's conviction in Count 4 is reversed and vacated, and the indictment is dismissed.

### D. Possession of Marijuana with Intent to Sell or Deliver

It is an offense to knowingly possess a controlled substance with the intent to sell or deliver it. T.C.A. § 39-17-417(a)(4). Marijuana is a controlled substance. T.C.A. § 39-17-415(a)(1). A jury may infer from the amount of a controlled substance, along with other relevant facts surrounding the arrest, that the defendant possessed the controlled substance with the intent of selling or otherwise dispensing it. T.C.A. § 39-17-419.

Possession may be either actual or constructive. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). "Constructive possession requires proof that a person had 'the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others.'" *Id*. (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997) (alteration in original)). "Constructive possession depends on the totality of the circumstances in each case" and "may be proven by circumstantial evidence." *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013). "One's mere presence in an area where drugs are discovered, or one's mere association with a person who is in possession of drugs, is not alone sufficient to support a finding of constructive possession." *Shaw*, 37 S.W.3d at 903. However, a defendant's knowing possession of a controlled substance "may be inferred from control over the vehicle in which the contraband is secreted." *State v. Brown*, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995) (citing *United States v. Pierre*, 932 F.2d 377, 392 (5th Cir. 1991)). Additionally, a person may possess contraband alone or jointly with others. *State v. Richards*, 286 S.W.3d 873, 885 (Tenn. 2009).

In the light most favorable to the State, the evidence shows that Defendant possessed over 345 grams of marijuana with the intent to sell or deliver it. Defendant denies that the marijuana belonged to him, pointing out that it was found on the passenger side of the vehicle where another person was sitting and that he did not claim possession of the marijuana in his statement to police, even though he claimed the "fake" powder and the digital scale. However, given that a large quantity of marijuana was found in plain view on the front floorboard of the SUV Defendant had been driving, which was registered to Defendant's mother and which also contained Defendant's wallet and mail, the jury could rationally conclude that Defendant constructively possessed the marijuana. *See Shaw*, 37 S.W.3d at 903 (finding the evidence sufficient to support defendant's constructive possession when a bottle containing cocaine was found on the front seat of a car driven by the defendant despite presence of a passenger). As to whether he had the intent to sell or deliver the marijuana, Defendant points to Investigator Schrotberger's concession on cross-examination that the amount of marijuana found in the SUV could have been for the personal consumption of three people. However, in addition to the

amount of marijuana, which Investigator Schrotberger also testified could be broken down into smaller quantities for resale, there was other circumstantial evidence of Defendant's intent to sell or deliver the drug. These include the plastic sandwich bags and a digital scale found in the vehicle, both of which are commonly used to weigh and package drugs for sale, and the $500 in cash found on his person when he was taken to the jail. *See State v. Ross*, 49 S.W.3d 833, 845 (Tenn. 2001) (finding possession of a large amount of cocaine along with plastic sandwich bags and digital scales sufficient to sustain conviction for possession with intent to sell). The evidence is more than sufficient to sustain Defendant's merged conviction for possession of marijuana with intent to sell or deliver.

### E. Resisting Arrest

A person resists arrest by "intentionally prevent[ing] or obstruct[ing] anyone known to the person to be a law enforcement officer . . . from effecting [an arrest] . . . by using force against the law enforcement officer or another." T.C.A. § 39-16-602(a). Force is defined as "compulsion by the use of physical power or violence and shall be broadly construed to accomplish the purposes of this title." T.C.A. § 39-11-106(a)(12). "'Passive resistance' generally does not constitute using force as contemplated by the preventing or obstructing an arrest statute." *State v. Burgess*, 532 S.W.3d 372, 393 (Tenn. Crim. App. 2017) (citing *State v. Corder*, 854 S.W.2d 653, 655 (Tenn. Crim. App. 1992) (concluding that a defendant's not moving and directing obscene language at officers were not sufficient to support a conviction for resisting arrest)).

Defendant argues that his actions when the officers arrested him at the Walnut Street residence were "text book [sic] examples of passive inaction" because he "simply laid there and was dragged out from underneath the car," did not resist or kick, and then "basically just played dead and let his limbs go limp." However, in the light most favorable to the State, the evidence shows that Defendant used force against the officers who were attempting to effectuate his arrest. Defendant ignored orders to come out from underneath a vehicle and had to be dragged out. Defendant then refused to place his arms behind his back so that he could be handcuffed. Instead, Defendant lay on one arm and stretched the other away from his body. Both Investigator Williams and Investigator Savage testified that Defendant struggled with the arresting officers before Investigator Williams was able to place handcuffs on him. "[T]his [C]ourt has consistently held that a defendant's efforts in preventing an officer from handcuffing him are sufficient to support the element of force." *State v. Gary Mitchell Hestand*, No. M2014-02208-CCA-R3-CD, 2015 WL 10684326, at *8 (Tenn. Crim. App. Oct. 7, 2015) (citing *State v. Jeremy D. Parvin*, No. E2014-01569-CCA-R3-CD, 2015 WL 2128585, at *3 (Tenn. Crim. App. May 6, 2015) (citing cases and finding sufficient evidence of force where defendant pulled away from officer, balled up his fist, then "locked his hands beneath him" when officer attempted to handcuff him), *perm. app. denied* (Tenn. Aug. 13, 2015)),

*no perm. app. filed*; *see also State v. Jonathan Lamont Jones*, No. W2011-02311-CCA-R3-CD, 2012 WL 4057263, at \*3 (Tenn. Crim. App. Sept. 17, 2012) (finding sufficient evidence where the defendant pulled his hands away from the arresting officers and "continued to resist the officers when they attempted to handcuff him"), *no perm. app. filed*; *State v. Timothy Wayne Grimes*, No. M2001-02385-CCA-R3-CD, 2002 WL 1885053, at \*4 (Tenn. Crim. App. Aug. 16, 2002) (finding sufficient evidence where defendant "locked his arms, thus preventing the officers from putting handcuffs on him"), *perm. app. denied* (Tenn. Dec. 23, 2002); *State v. Daniel M. Tidwell*, No. 01C01-9807-CC-00288, 1999 WL 436840, at \*3 (Tenn. Crim. App. June 30, 1999) (finding sufficient evidence where defendant "flailed his arms and struggled with the officers" as they were attempting to handcuff him), *perm. app. denied* (Tenn. Jan. 3, 2000). The evidence is sufficient to support Defendant's conviction for resisting arrest.

## *II. Nature of the Warrant Being Served*

On October 19, 2017, Defendant filed a motion in limine requesting that the trial court exclude "[a]ny information regarding the warrant the officers were trying to serve, and specifically the offense charged in the warrant" "because any probative value will be substantially outweighed by unfair prejudice." The trial court denied the motion, finding that testimony regarding the warrant "would be relevant to allow the officers to testify about why they were there" and why they attempted to block Defendant's vehicle from leaving. The trial court further found that the evidence was not unduly prejudicial because Defendant was not the subject of the warrant.

"It is well established that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of discretion." *State v. Stinnett*, 958 S.W.2d 329, 331 (Tenn. 1997). "'Reviewing courts will find an abuse of discretion only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party.'" *State v. Herron*, 461 S.W.3d 890, 904 (Tenn. 2015) (quoting *State v. Parker*, 350 S.W.3d 883, 897 (Tenn. 2011)).

Evidence must be relevant to be admissible. Tenn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Unfair prejudice is generally defined as "[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Banks*, 564 S.W.2d 947,

951 (Tenn. 1978); *see State v. Young*, 196 S.W.3d 85, 106 (Tenn. 2006) ("Prejudice becomes unfair when the primary purpose of the evidence at issue is to elicit emotions of 'bias, sympathy, hatred, contempt, retribution, or horror.'") (internal citation omitted).

In this case, the trial court found that evidence of the nature of the warrant being served by the officers was relevant to establish why they approached Defendant's vehicle and attempted to effectuate the stop in the manner that they did. The fact that Defendant's passenger was wanted for attempted murder and was suspected to be armed explained why two police vehicles boxed in Defendant's SUV when it was stationary and not committing any traffic violations. Additionally, it explained why multiple officers exited the vehicles wearing raid gear and with their guns drawn. There was no suggestion during the course of the trial that Defendant was implicated in the underlying crime or that he was guilty solely because of his association with James. Defendant argues on appeal that this testimony about "the fact that [the officers] were attempting to apprehend a dangerous fugitive . . . had a prejudicial effect on [Defendant] and his defense" without explaining what the prejudicial effect was or how it affected his ability "to present a fair and accurate defense." Defendant has failed to establish that the trial court abused its discretion in admitting this testimony, and he is not entitled to relief on appeal.

### III. Lesser-Included Offense Instruction

Defendant argues that the trial court erred by failing to instruct the jury on misdemeanor reckless endangerment as a lesser-included offense of aggravated assault. The State responds that Defendant has waived this issue both because he failed to specifically identify misdemeanor reckless endangerment as a lesser-included offense in his written motion and because he failed to include the jury instructions in the record on appeal. We agree with the State.

A defendant has a right to a complete and correct charge of the law, which "'includes the right to jury instructions on each and every lesser-included offense embraced within the charged offense(s) and supported by the proof.'" *State v. Thorpe*, 463 S.W.3d 851, 859 (Tenn. 2015) (quoting *State v. Davis*, 266 S.W.3d 896, 902 (Tenn. 2008)). Upon written request by either party, "the trial judge shall instruct the jury as to the law of each offense *specifically identified* in the request that is a lesser included offense of the offense charged in the indictment[.]" T.C.A. § 40-18-110(a) (emphasis added). In the absence of a written request "specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any lesser included offense charge." T.C.A. § 40-18-110(b). "In consequence, 'if a defendant fails to request an instruction on a lesser-included offense in writing at trial, the issue will be waived for purposes of plenary appellate review and cannot be cited as error

- 11 -

in a motion for a new trial or on appeal.'" *State v. Fayne*, 451 S.W.3d 362, 371 (Tenn. 2014) (quoting *State v. Page*, 184 S.W.3d 223, 229 (Tenn. 2006)); *see* T.C.A. § 40-18-110(c).

In this case, Defendant filed a pre-trial motion on March 20, 2017, requesting the trial court instruct the jury on "all lesser included offenses." Defendant did not specifically identify his request for misdemeanor reckless endangerment as a lesser-included offense of aggravated assault until the charge conference at the close of the proof. Because Defendant did not specifically identify any lesser-included offenses in his written request, he has waived plenary review of the issue on appeal and will only be entitled to relief if he can establish that the trial court committed plain error. *See Page*, 184 S.W.3d at 230; Tenn. R. App. P. 36(b) ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time[.]").

In order to be granted plain error relief, Defendant bears the burden of establishing the following five factors:

> (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the issue was not waived for tactical reasons; and (5) consideration of the error is necessary to do substantial justice.

*State v. Minor*, 546 S.W.3d 59, 67 (Tenn. 2018). "If a defendant fails to establish any of these criteria, an appellate court must deny relief under the plain error doctrine, and an appellate court need not consider all criteria when the record demonstrates that one of them cannot be established." *Id*.

In this case, Defendant failed to include either the written jury charge or the transcript of the trial court's oral recitation of the instructions in the record on appeal. Defendant bears the burden of preparing an adequate record on appeal, which should include "a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b); *see State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993). Without the jury instructions, the record does not clearly establish what occurred in the trial court. *See State v. Stephano L. Weilacker*, No. M2010-00497-CCA-R3-CD, 2011 WL 743416, at *6 (Tenn. Crim. App. Mar. 3, 2011), *perm. app. denied* (Tenn. July 18, 2011). Moreover, without knowing if the jury was given the option to convict on any other lesser-included offense, we are unable to conduct a proper harmless error analysis and determine whether consideration of the asserted error is necessary to do substantial justice. *See Moore v. State*, 485 S.W.3d 411, 421-22 (Tenn.

2016) (describing the different harmless error analyses under *State v. Williams*, 977 S.W.2d 101 (Tenn. 1998) and *State v. Allen*, 69 S.W.3d 181 (Tenn. 2002)). Because Defendant has failed to establish all of the required factors for plain error review, we must deny relief.

*Conclusion*

Based on the foregoing, Defendant's conviction for possession of an imitation controlled substance with intent to sell or deliver in Count 4 is reversed and vacated. Because the two year sentence for that conviction was to be served concurrently with the two year sentence for possession of marijuana with intent to deliver in Count 7, Defendant's overall sentence of ten years remains unaffected. Additionally, on remand, the trial court should enter an amended judgment in Count 6, possession of marijuana with intent to sell, imposing a sentence for that conviction even though it merged with Count 7. *See State v. Berry*, 503 S.W.3d 360, 365 (Tenn. 2015). In all other respects, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE